Baker *v.* Pottmeyer *et al.*

No. 8087.

BAKER *v.* POTTMEYER ET AL.

INJUNCTION.—*Good-Will.*—*Obligation not to Engage in Business Sold or Aid Others.*—*Breach.*—*Remedy.*—Where P. sold his business to B. and C., and obligated himself to them, or either of them, never again to engage in the business in L., or to aid, encourage, or advise others so engaged, and C., having sold all his interest in the contract to B., engaged in the business in L., and was aided, encouraged and advised by P., adequate damages can not be estimated for the breach of such covenant, and consequently injunction was B.'s proper remedy against both P. and C., the one from giving, and the other from receiving, the aid.

SAME.—In such case, the business being packing and selling ice, a finding that ice was packed by C. with the aid of P., but not for the purpose of selling in L., would not entitle B. to judgment.

SAME.—*Leasing Premises.*—*Preference.*—In such case, a lease of his icehouses to C. by P. would not be such a breach of his covenant to give B. and C. the preference, as to entitle B. to an injunction, C. not being under any obligation to keep out of the ice business on his own account.

SAME.—*Exclusion from Possession.*—*Forcible Entry and Detainer.*—If, in such case, P., colluding with C., broke in and violently excluded B. from possession, an action for forcible entry and detainer would have afforded B. appropriate and prompt relief.

SAME.—*Refusal to Accept Renewal of Lease.*—*Waiver of Preference.*—In such case, if B. refused to accept a renewal of his lease, at a price named, his consent was not necessary to the legality of a lease thereafter made, on the same terms, to another, notwithstanding his right of preference.

From the Cass Superior Court.

Baker *v.* Pottmeyer *et al.*

*M. Winfield* and *Q. A. Myers*, for appellant.
*H. C. Thornton*, for appellees.

WOODS, J.—Complaint in two paragraphs by the appellant, praying an injunction against the appellees. Each paragraph is based upon and alleges breaches of an agreement of the parties, of the tenor following, to wit:

"This agreement witnesseth that John Pottmeyer has this day sold and delivered to Patrick Campbell and John Baker the following property, to wit: One pair of black horses and harness now used on said team, one ice-wagon, all the ice now held and owned by said Pottmeyer in the ice-houses situate on his lot, No. 125 of the town of West Logan, and in the ice-house situate near the covered Eel river bridge, on the south side of Eel river, and the ice in the ice-house near the Forest mill-dam, and the ice in the ice-house near the Wabash dam; all the tools and appliances owned and used by said Pottmeyer in cutting, packing and delivering ice; also the ice-house owned by said Pottmeyer, situate near the Wabash dam, on the north side of the Wabash river, on land owned by Hamilton, and the ice-house owned by said Pottmeyer situate near the Forest mill-dam, on land owned by the city of Logansport; for which said property said Campbell and Baker agree to pay said Pottmeyer the sum of forty-one hundred dollars," [in instalments here specified]. "Said Campbell and Baker are to have the use of all the aforesaid ice-houses, in which the aforesaid ice, hereby purchased, is stored and packed, free from rent from this time till December 1st, 1877, and the said Pottmeyer agrees to pay the ground rent on the said two ice-houses hereby purchased until December 1st, 1877; and the said Pottmeyer hereby binds and obligates himself to the said Campbell and Baker, or either of them, that he will never again, within the city of Logansport, in any manner, either pack, sell or deliver ice, except for his own family use, and he will never again, within the limits of said city, in any manner,

Baker *v.* Pottmeyer *et al.*

enter into said business, and will never give any aid, encouragement or advice to any other person or persons, to pack, sell or deliver, or to enter into said business, in any manner ; and he will not do the aforesaid things either secretly or openly, or in his own or in the name of any other person or persons. And said Pottmeyer also binds himself that, after the present year, he will give the said Campbell and Baker the preference for renting all the said ice-houses owned by him, or which he may at any time own ; and he hereby agrees that he will never rent or lease, in any manner, and he will never sell any ice-house which he now owns, or may hereafter own, to any other person or persons for the purposes of packing or selling ice.

"Witness our hands and seals, this 7th day of April, 1877.

[Signed]     "JOHN POTTMEYER, [L. S.]
              "PATRICK CAMPBELL, [L. S.]
              "JOHN BAKER. [L. S.]"

The defendants each answered by a general denial. Trial by jury ; verdict for the defendants ; motions by the plaintiff for judgment in his favor on the answers to interrogatories, notwithstanding the general verdict, and for a new trial, overruled and exceptions saved ; judgment on the verdict. Numerous errors are asserted, and the questions are presented and discussed in a variety of forms ; but the merits of the case are involved in the instructions given and refused.

The court, of its own motion, stated the case and instructed the jury as follows :

"This action is brought to enjoin the defendants from selling ice within the city of Logansport. The complaint alleges that the defendant Pottmeyer, on the 7th day of April, 1877, entered into a written contract with the plaintiff and his co-defendant, Patrick Campbell, and each of them, that he would never thereafter, in the city of Logansport, either pack, sell or deliver ice, except for his own family use, and that he would never encourage or advise any

Baker *v.* Pottmeyer *et al.*

other person or persons so to do, either in his own name or in the name of any other person; and that he would never lease or sell any of the ice-houses he then owned or might thereafter own for such purpose; that, on the 1st day of December, 1877, Campbell, the defendant, sold all his interest in the contract to the plaintiff; that the defendants Pottmeyer and Campbell have colluded together in derogation of the plaintiff's rights, to enter into the same business in the city of Logansport, and are carrying on said business in the name of Campbell; that Pottmeyer is not only interested, but is a partner in the business. These charges the defendants severally deny. The court gives you the following charges as to the law that shall govern you in forming your verdict:

"1st. It was not a violation of the contract of April 7th, 1877, for Pottmeyer to enter into a contract with the defendant Campbell, or in any manner to aid him to pack, sell or deliver ice within the city of Logansport, nor was it a violation of said contract to rent him the ice-houses named in that contract. The agreement of Pottmeyer, in that contract, was not to give such aid to any person or persons other than Campbell or Baker.

"2d. The contract between Campbell and Baker, of December 8th, 1878, does not change the right of Pottmeyer to aid Campbell or Baker in packing, selling or delivering ice in the city of Logansport, and the right of Pottmeyer to give such aid remained the same after making this agreement as before.

"3d. There is no evidence making a case against Campbell, and your verdict should be for him.

"4th. If you find that Pottmeyer, at the commencement of this action, was not engaged in packing, selling or delivering ice in the city of Logansport, either in his own name or in the name of the defendant Campbell, then your verdict should be for the defendant Pottmeyer.

"5th. If you find that the defendant Campbell, after selling out to Baker, had no intention of going into the ice business again, and that Pottmeyer, desiring to go into said business, induced Campbell to permit him to use his name for that purpose, and that the packing, selling and delivering of the ice complained of was done in fact by Pottmeyer, but in the name of Campbell only, your finding should be against Pottmeyer."

At the request of the appellant the court gave the following:

"1st. The sale and transfer by Campbell to Baker of all his right, title and interest to and in the contract of April 7th, 1877, with defendant Pottmeyer was valid, and gave the plaintiff the same rights thereunder that Campbell and Baker had before."

But the court refused the following:

"2d. After such transfer by Campbell to Baker, Campbell bore the same relation to the contract as a stranger.

"3d. Under the contract of April 7th, 1877, the defendant Pottmeyer obligated himself not to lease the ice-houses for the purpose of packing ice to any one except to Campbell and Baker; and, after the transfer by Campbell to Baker of his interest in the contract, Pottmeyer could not legally lease said houses for the purpose of packing ice to Campbell without the consent of Baker.

"5th. If Campbell, after the transfer of his interest in the contract to Baker, without the consent of Baker, obtained a lease of the ice-houses for the purpose of packing ice, and, before the commencement of this suit, had commenced to fill such ice-houses with ice to be retailed in Logansport, such action upon his part is illegal, and your verdict should be for the plaintiff as against him."

6th. (In substance.) Under the contract of April 7th, 1877, Pottmeyer had no right to lease the ice-houses therein named to any other person or persons than Campbell and Baker, for the purpose of packing ice; and, if Campbell transferred

his interest in the contract to Baker, Baker became possessed of all the rights against Pottmeyer which Campbell and Baker theretofore had, and if, without Baker's consent, Pottmeyer leased said ice-houses to Campbell for the purpose of packing ice for retail in Logansport, and Pottmeyer was encouraging and aiding him with labor, money and advice, you should find for the plaintiff.

7th. (In substance.) If Campbell assigned his interest in the contract to the plaintiff, thereafter Pottmeyer could not lawfully form a partnership with Campbell to engage in the ice business in said city, and use the ice-houses named in the contract for that purpose, without the consent of Baker, and if such partnership was formed, and the firm, before the commencement of this action, had begun to cut and pack ice in said houses, for the purpose aforesaid and without Baker's consent, your verdict should be for the plaintiff as against Pottmeyer.

In further explanation, it is proper to state that there is no proof or claim that Campbell made any formal assignment or transfer, to Baker, of the contract of April 7th, 1877, but on the 8th day of December, 1878, Baker executed to Campbell an undertaking, wherein was a recital of the tenor following: "Whereas the said Patrick Campbell has this day sold to said John Baker all his right, title and interest in and to certain ice-houses, ice, tools, wagons, horses and all things necessary to carry on the business of packing and delivering ice, as described in an article of agreement, dated on the 7th day of April, 1877, signed by John Pottmeyer, Patrick Campbell and John Baker."

The terms used in this recital do not, of themselves, express a transfer of Campbell's interest in the contract, but only of his interest in the property described therein; but counsel for the appellant insist that the agreement of Pottmeyer not again to engage, or aid others, in the business, was not a contract personal to Campbell and Baker,

but that it was so far incident to the property and business which it was designed to protect, that Campbell's surrender to the appellant of his right in the property and business carried with it the benefit and right in equity of said agreement. In support of this view are cited *Gompers* v. *Rochester*, 56 Pa. St. 194; *Guerand* v. *Dandelet*, 32 Md. 561; S. C., 3 Am. Rep. 164; *Dunlop* v. *Gregory*, 10 N. Y. 241. We need not decide upon this point. The conflict between the instructions given and those refused is not on the question whether Campbell had assigned his interest in Pottmeyer's covenants, but upon the meaning and effect of those covenants, assuming that Baker has the same right to enforce them, which, before or without the assignment, Campbell and Baker would have had.

We will first consider the case in reference to Campbell, in whose favor the court directed the jury to return a verdict. The principal ground, on which the appellant's claim for relief against him is based by counsel, is, that he took a lease, or pretended lease, of an ice-house, to the use of which, under the contract and the assignment thereof, the appellant had a preference, and which house the defendant Pottmeyer had broken into and wrested from the possession of the appellant for the purpose of turning it over to Campbell. We deem it clear that the appellant is not entitled to an injunction on this ground. It is not pretended that, after assigning to Baker, Campbell was under any obligation to keep out of the ice business on his own account. The appellant asked an instruction, that, by virtue of the assignment, Campbell became a stranger to the contract. If so, he was certainly free from any obligation on account of it. Counsel claim, however, that, by selling his interest to Baker, Campbell came under an implied covenant to respect the rights so transferred, and not to join with Pottmeyer in any breach or denial thereof, and that his acceptance of a lease of the ice-house was a breach of his obligation, which enti-

tles the plaintiff to the relief prayed. If it were conceded that, by accepting such lease, Campbell had violated his own obligation, or had knowingly implicated himself in a violation of the contract by Pottmeyer, the right to an injunction does not follow. Upon his own theory, Baker had only a preference to a lease of the houses, and, as no fixed rental had been agreed upon, Pottmeyer might lawfully lease to Campbell, after offering to Baker a preference on equal terms ; and, if the appellant rejected the lease, Campbell was not forbidden to accept it, though taking it for the purpose of carrying on the same business which the plaintiff was conducting. The entire ground for complaint, therefore, in this respect, is that a right of preference to the use of a particular ice-house had been denied. But, for the breach of a contract to lease such a property, ample remedy is afforded in an action for damages ; and nothing is averred to make this case an exception, if such averment were possible. Indeed, if Pottmeyer, colluding with Campbell, broke in and violently excluded the plaintiff from possession, as it is alleged that he did, an action for forcible entry and detainer would have afforded the appellant appropriate as well as prompt relief.

There is another ground on which the court was justified in refusing to give the appellants' third, fifth and sixth instructions, which were directed against the validity of the lease to Campbell. They each assume that the lease could, under no circumstances, be lawfully made without Baker's consent. There was undisputed evidence in the case that Pottmeyer offered to renew the lease to the plaintiff, for a price named, but the plaintiff refused the terms, and then the lease was made to Campbell, nominally at least, on the same terms as were offered to the plaintiff ; and, in answer to an interrogatory, the jury found that the lease so made to Campbell was not "a mere sham, made to cover Pottmeyer's interest in the ice business." If the plaintiff did in

fact refuse to accept a renewal of his lease, his consent was not necessary to the legality of a lease thereafter made to another, notwithstanding his right of preference. The instructions ignored the evidence on this subject, and, for this reason, were properly refused.

Some claim is made that there was a partnership between Pottmeyer and Campbell in the use of the ice-houses and in the conduct of the proposed business. The seventh instruction asked was based on that supposition, and it is objected that the court failed to instruct the jury in reference to that theory of the case. The case turned, in this respect, wholly upon the question whether the lease to Campbell was a sham, put forward to conceal Pottmeyer's interest; and, as already shown, the jury answered specially that this was not so. Under the circumstances and proofs in the case, this is equivalent to a finding that there was no partnership. Counsel, however, insist that this finding was the result of misinstruction upon the law. "The court instructed," says the counsel, "that it was not wrong for Pottmeyer to lease to Campbell. If that were true, * * * the lease is valid, and not a sham. The answer is correct under the instruction." This is an utter confusion of ideas, of which it is not to be presumed the jury could have been guilty. Whether a contract was made in good faith, or as a sham to conceal the real purpose of the parties, is one thing; and whether that contract is invalid because of being in supposed conflict with some other and inconsistent obligation, is quite a different thing. The instruction has reference to the latter point only.

We are of the opinion, however, that the instructions, which the court gave of its own motion, are based upon a misconception of the legal effect of the contract into which the parties had entered. Pottmeyer had bound himself to "Campbell and Baker, or either of them," that he would

not do the things named; that is to say, he bound himself to both of them jointly, and to each of them severally. The phraseology was well calculated to accomplish the manifest and reasonable purposes of the parties, under any probable contingency which could happen. If Campbell and Baker should continue in the business jointly, the joint obligation was available; if they separated, but each continued in the business, or either of them retired from the business, the other continuing therein, they each had a separate personal covenant, by which Pottmeyer was bound not to return to the business himself, nor to aid any other in the business. He could not, as against Campbell and Baker, aid any other person, nor either one of them, in a separate business hostile to that of the firm; and as against either Campbell or Baker, yet engaged in the business, he could not help the other.

It follows, therefore, that Pottmeyer had no right, in any manner, to aid Campbell in instituting and prosecuting the hostile business; and Campbell, being cognizant, as he necessarily was, that Pottmeyer had no right to give, he had no right to receive, that aid. From the nature of the case, just and adequate damages can not be estimated for the breach of such a covenant, and, consequently, injunction is the proper remedy. The plaintiff was entitled, on proof that Campbell was receiving the aid of Pottmeyer in prosecuting the business, in violation of the agreement, to an injunction against both of them, the one from giving, and the other from receiving, the aid.

The appellant moved for judgment on the answers to interrogatories, and insists that the court erred in overruling the motion. The ruling, however, was right. It is found that ice was packed by Campbell, with Pottmeyer's aid, but not that it was done for the purpose of selling in Logansport. It is found that Campbell assigned to Baker all his

interest in the contract with Pottmeyer, dated April 7th, 1877, but what the terms of that contract were, or that it was the contract sued on, is not found.

The judgment is reversed, with instructions to grant a new trial.