(Decided 16th December, 1887.)

JAMES A. WEBB *vs.* FRANK J. McCLOSKEY.

*Sale of Good-will—Liability for acts of a Third party—*
*Practice in the Court of Appeals.*

McC. sold to C. W. W. the stock, good-will and fixtures of a business which had been conducted in the store No. 119 N. Calvert Street, Baltimore City, by H. from whom McC. had purchased it; and he agreed not to engage in, nor to assist H. to engage in the same business in the neigborhood of the store in which the business sold had been conducted. In an action by McC. against J. A. W. on a note for the balance of the purchase money, drawn by C. W. W. to the order of McC. and indorsed before delivery, by J. A. W. it was HELD:

1st. That the act of H. in establishing a competing business in the neighborhood of said store, could not be relied on to defeat, either wholly or partially, the right of the plaintiff to recover on said note.

2nd. That the agreement of the plaintiff related only to his own acts, and not to those of H. over which he had no control.

An instruction relating to the effect of certain testimony, will not be reviewed on appeal where the testimony is not contained in the

Webb vs. McCloskey.

record; and the Appellate Court will assume, in the absence of any thing showing the contrary, that the ruling of the Court below in this respect was right.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*William M. Busey,* for the appellant.

*Albert Ritchie,* for the appellee.

McSHERRY, J., delivered the opinion of the Court.

James Hyland who was then engaged in business at 119 North Calvert Street in the City of Baltimore, on the last of December, eighteen hundred and eighty-three, executed and delivered to the appellee a bill of sale of certain personal property pertaining to that business, and some eighteen months afterwards sold the same property to the appellee under the following assignment, viz., "I, James Hyland, trading under the firm name of James Hyland and Company, in consideration of the sum of one thousand dollars to me paid by Frank J. McCloskey, do hereby sell and convey to said Frank J. McCloskey the following personal property, to wit: The stock, good-will and fixtures of store No. 119 North Calvert Street, including horse, wagon and harness, warranted against all adverse claims." On the date of this transfer the appellee sold the same property to Charles W. Webb, received two hundred and fifty dollars in cash in part payment, and delivered to him the following agreement, viz., "This is to certify that I have agreed to sell to Charles W. Webb, Store No. 119 Calvert Street, now occupied by James Hyland, the said Hyland having given me the power to

sell, for the sum of $1100.00 and to pay one month's rent; possession to be given Saturday, August 14th; two hundred and fifty cash, eight hundred and fifty in thirty days. Stock to $150.00, horse and wagon $300.00, fixtures $50.00. And all right, title, and interest in said business." Some days later another paper was executed by McCloskey which is in these words, viz., "Baltimore, August 13th, 1886. Received of Charles W. Webb two hundred and fifty dollars in cash, and his note at thirty days from this date, for eight hundred and fifty dollars, drawn to my order, endorsed by James A. Webb, in full for purchase money of stock, good-will, fixtures, horse, wagon and harness, in and about the business conducted under the style of James Hyland & Co., at No. 119 N. Calvert Street, full authority to sell and deliver which I possess; and it is hereby agreed, that I will not engage in nor assist James Hyland to engage in the same business in the neighborhood of No. 119 N. Calvert Street." Upon the execution of this last paper Charles W. Webb delivered to the appellee the promissory note sued on in this case, signed by him, Webb, payable to the appellee and endorsed by the appellant, James A. Webb, for the balance due by Charles W. Webb to the appellee on the above mentioned purchase. Within two months after these transactions Hyland opened a competing establishment across the street from 119 North Calvert Street and carried on business there to the detriment and injury of Webb. Upon the maturity of the note it was protested for non-payment and suit was instituted upon it. At the trial a single exception was reserved and that presents for review the rulings of the Superior Court of Baltimore City upon the prayers set out in the record. At the argument in this Court the appellant's counsel abandoned his first prayer, and we have consequently merely to consider his third, and the six which were granted at the instance of the appellee.

The appellant's third prayer sought an instruction from the Court to the jury to the effect that the appellant might

recoup out of the claim of the appellee upon the note alluded to, such sum as the jury should find from the evidence the "good-will" of the business sold by McCloskey to Charles W. Webb was injured by the competing establishment opened as herein stated by Hyland; if the jury should find that McCloskey in making the sale to Charles W. Webb was acting as the agent or representative of Hyland and not as the owner himself of the property sold.

We have been referred to a number of adjudged cases upon the subject of the sales of "good-will," but we are unable to see what application they have to this case. Whilst it is undoubtedly true that McCloskey sold, under the paper writing of August the thirteenth, to Charles W. Webb the "good-will" of the business conducted at 119 North Calvert Street, and that he bound himself not to engage in, and not to assist Hyland to engage in the same business in that neighborhood, it is equally true that McCloskey did not engage in the same business, and that he did not assist Hyland to do so. McCloskey had no power to prevent Hyland from going into the business, and he did not agree that Hyland should not do so. His agreement related only to his own acts, and not to Hyland's. Whilst he sold the "good-will" of the business as he owned it; that sale did not imply that Hyland or some other person, at some future day, should not, except at the risk of the appellee, engage in a competing business in the same vicinity. We fail to see from any thing disclosed by the record in this case, upon what known principle the subsequent conduct of Hyland in establishing a competing business in that neighborhood, can be relied upon to defeat either wholly or partially the right of the appellee to recover upon the note which is the cause of action in this proceeding; and we have been referred to no authority supporting such a position. The theory of the prayer which we are considering involves that proposition, pro-

vided the jury should find that McCloskey was merely the agent of Hyland in making the sale; but there is not the slightest particle of evidence before us from which such an agency can be even conjectured, much less legally inferred.

The cases of *Guerand vs. Dandelet,* 32 *Md.,* 561, and *Warfield vs. Booth,* 33 *Md.,* 63, have been cited in support of the prayer we are now considering. In the first of these cases there had been a sale by Francis Guerand, the father of the appellant, Eugene F. Guerand, to Jean Feuillan and the appellee, Dandelet, of the custom, good-will, name and utensils of a dyeing and scouring establishment; and Guerand, the vendor, covenanted that "he would not, *at any time thereafter* 'exercise or conduct in the City of Baltimore, the trade or profession of a dyer or scourer, *nor directly or indirectly* compete with the aforesaid lessees and vendees for the good-will and custom sold as aforesaid.'" Subsequently E. F. Guerand, the son, ostensibly, resumed the business under his own name, but it was alleged that the use of his name was a mere cover and blind adopted with the intent to conceal the interest of the father in the establishment, and that the capital employed in the business belonged to Francis Guerand. Upon this state of facts an interlocutory injunction was granted, and an appeal from that order was taken. This Court after holding the covenant to be valid, says: "The allegation of the bill is, that the name of the son is used as a mere cover and blind to conceal the interest of the father. If this be so, as we are bound to assume on this appeal, the case is unquestionable. The father's covenant is that he will not, directly or indirectly, compete for the good-will and custom sold to the complainant and Feuillan. This restrains him from the use of any means whatever whereby the value of the thing sold, and for which he has received his price, may be in any manner impaired or lessened. He can neither compete himself, nor employ or combine with others to do it." The case of *War-*

*field vs. Booth,* was an action at law upon a contract of sale of the "good-will of practice" as surgeon and physician ; and this Court sustaining the right of the plaintiff to recover for a breach of the contract, allowed the defendant to set off against the plaintiff's claim the unpaid notes given by the plaintiff to the defendant for part of the price agreed to be paid for such "good-will." The facts of these two cases are not similar to the facts of this case. Had McCloskey resumed a competing business in the name of Hyland or in his own name, or had he assisted Hyland therein, he would have brought himself within the principles recognized and applied in one or the other of the two cases alluded to. But, as we have stated, he neither engaged in the business himself nor did he assist Hyland, and if he is to be held accountable at all, it would be for the consequences of Hyland's acts over which he had no control, and against the happening of which he did not contract. As, therefore, there is not any evidence before us tending to show that he has violated his agreement with Webb, and as there is no evidence whatever from which the jury could have legally concluded that in making the sale to Webb he was acting, not for himself, but for Hyland, we can reach no other judgment than that the Superior Court was right in rejecting the third prayer of the appellant.

The first and second instructions given at the instance of the appellee announce the proposition that if the appellant endorsed the note before its delivery, as surety, the plaintiff was entitled to recover on the first count of the declaration, unless the jury should find that the plaintiff failed to deliver some part of the property specified in the contract of sale. The sixth instruction was framed upon the second count of the declaration, and declares the defendant liable if he placed his name upon the note as endorser, and the note was presented at maturity and dishonored, and that he had due notice thereof. These instructions are

certainly free from any error and no objection was taken to them at the argument before us.

If the property purchased included, as we think it did, the "good-will" of the business, the appellee performed this part of his undertaking by a delivery of the property, and of the good-will as far as that was capable of being delivered; and the subsequent interference with that "good-will" by Hyland, upon his own motion, without aid or assistance from McCloskey could not, as we have observed in a former part of this opinion, prejudice the appellee's right to recover on the note. This principle is distinctly announced by the Court below in the third instruction of the appellee, and we think correctly states the law.

We are of opinion that the fifth instruction was properly granted. There was no evidence that McCloskey had authority to bind Hyland not to enter into a competing business.

The fourth instruction relates to the effect of the testimony of the witness Barron, but as that testimony is not in the record we are unable to express any opinion in regard to it, and we must assume, in the absence of any thing showing the contrary, that the ruling of the Court in this respect was correct. *Gent vs. Lynch*, 23 *Md.*, 58.

Finding no errors in the rulings appealed from the judgment will be affirmed.

*Judgment affirmed.*

(Decided 16th December, 1887.)