GRAND UNION TEA COMPANY *v.* WALKER.
[No. 26,382. Filed April 16, 1935.]

*Joseph H. Iglehart,* for appellant.

*J. L. Sanders* and *F. P. Bamberger,* for appellee.

HUGHES, J.—This is an action by the appellant, Grand Union Tea Company, against the appellee, Ivan W. Walker, to enjoin continued violation by the appellee of negative covenants in a written contract of employment between the parties, and to recover damages for breach of the contract by the appellee. The complaint is in one paragraph. Appellee demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained and appellant having elected to stand on the court's ruling on the demurrer, failed to plead further and brought this appeal.

The assignment of error is as follows: The superior court of Vanderburgh county erred in sustaining appellee's demurrer to appellant's complaint.

It appears from the complaint that the appellant is a corporation organized under the laws of the State of New Jersey and had been engaged in the business of selling teas, coffees, and other merchandise, in the states of Indiana, Illinois, and Kentucky.

That on or about the 17th day of December, 1928, the appellant employed the appellee, Ivan W. Walker, as a head salesman with headquarters in Evansville, Indiana, to assume control of and be responsible for routes as-

signed to him in territory in said states, and to train and assume control of salesmen and other employees as directed by the appellant and to solicit orders for and deliver merchandise handled by the appellant.

That from said 17th day of December, 1928, until the 2nd day of April, 1932, the appellee worked for appellant and performed such duties for which he was employed; from September 26, 1931, to March 17, 1932, appellee performed the duties of branch manager for appellant with headquarters in Evansville, Indiana.

That the appellee worked for the appellant continuously from the 17th day of December, 1928, up to and including the 2nd day of April, 1932. That during said period of appellee's said employment by the appellant they entered into written contracts which were of the same general tenor and effect, the first of which was executed and entered into by said parties on the 17th day of September, 1928; another written contract was executed and entered into by said parties on the 8th day of March, 1930; that another such written contract was entered into by said parties on the 21st day of July, 1930; and another one on the 26th day of September, 1931; and another one on the 17th day of March, 1932, and that under said last mentioned contract said appellee was employed by and acted as head salesman for the appellant until the 2nd day of April, 1932. That on said 2nd day of April, 1932, appellee's employment by appellant was terminated.

That the contract so entered into consisted of twenty-three sections. That the first section provides as follows:

"The Company hereby employs the Head Salesman for a term of eighteen (18) months to perform, under its direction, the duties of a Head Salesman as provided for by the terms of this agreement and by the rules and

regulations of the Company now or hereafter in force. The Company agrees to pay the Head Salesman a salary at the rate of $37.50 per week for each week the Head Salesman is actually engaged in the service of the Company."

The ninth section provides: "The Head Salesman further agrees that on the termination of his services, for any cause, or upon the presentation of a written order by any authorized agent of the Company, he will promptly turn over to the Company, or such agent, lists of customers, all books of accounts, papers, orders and all other property belonging to it or used in its business."

The tenth section provides: "The Head Salesman agrees that during his employment with the Company and after the termination of his services, for any cause, he will not divulge to any person or persons, not connected with the Company, any of its business methods, forms, names or addresses of customers; and the Head Salesman further covenants and agrees that he will not at any time while in the employ of the Company, nor within a period of Eighteen Months after the termination of his services, either:

"(1) For himself, or any other person, firm or corporation, directly or indirectly, engage in the business of selling Teas, Coffees, Baking Powders, Spices, Extracts, Soaps or other merchandise handled by the Company during his period of employment within any county in which his headquarters have been, nor in any of the territories or delivery routes which shall have been assigned or entrusted to him or placed in his charge or under his direction by the Company, either as Head Salesman or in any other capacity; or, . . .

"(3) For himself or any other person, firm or corporation, directly or indirectly, solicit or take orders

for or sell or deliver any such merchandise in such county, territories or delivery routes; or

"(4) In any way, directly or indirectly, solicit, divert, take away or interfere with, or attempt to solicit, divert, take away or interfere with any of the custom, trade, business or patronage of the Company in such county, territories, or delivery routes, or in any way, directly or indirectly, interfere or attempt to interfere with any of the salesmen or solicitors who shall be employed by the Company, or induce or attempt to induce any of them to leave the employ of the Company or violate the terms of their contract with it."

Section eleven provides: "If the Head Salesman fails to perform the services required to the complete satisfaction of the Company or fails to perform any one or more of the terms and conditions of this agreement to be by him performed, the Company may terminate this contract without notice and dispense with the services of the Head Salesman."

It is further alleged in the complaint that during said time which appellee was employed by the appellant as aforesaid, the appellee became fully acquainted with appellant's methods in conducting its said business and became personally acquainted with appellant's customers and their residences in and on its delivery routes in Southwestern Indiana and Northwestern Kentucky.

That the employment of appellee terminated on the 2nd day of April, 1932. That immediately thereafter, and within less than one month after the 2nd day of April, 1932, the appellee, in violation of the provisions and terms of his said contract with appellant, proceeded to open up and engage in the business of selling and to sell teas, coffees, and other merchandise which had been handled by the appellant as aforesaid, within said City of Evansville, Indiana, and within Vanderburgh

County, Indiana, in which city and county appellee's headquarters had been located throughout the entire period he was employed as head salesman by the appellant as aforesaid.

That since said 2nd day of April, 1932, appellee has been engaged and is now engaged, indirectly through others, in soliciting, diverting, taking away interfering with, and in attempting to solicit, divert, take away and interfere with, the custom, trade, business and patronage of the appellant in such counties, territories and delivery routes in said southwestern portion of Indiana and in said northwestern portion of Kentucky. That such custom, trade, business and patronage of the plaintiff in such counties, territories, and delivery routes were of great value to the appellant, and that same had been established and developed at great cost and expense to the appellant, and that the aforesaid action of appellee in soliciting, diverting, taking away and interfering with the same, and in selling such goods and merchandise as aforesaid has greatly damaged the appellant, and that the continued action of appellee in that regard will cause further damage to the appellant.

Appellant prayed for an injunction against the appellee enjoining and restraining the appellee from directly or indirectly soliciting, diverting, taking away or interfering with, or attempting to solicit, divert, take away or interfere with, any of the custom, trade, business, or patronage of the appellant, in the territories and delivery routes in said counties which had been assigned to appellee for a period of eighteen months from April 2, 1932.

The question presented is: Does the complaint state a cause of action giving appellant the right to enforce appellee's negative covenants in the employment contract by an injunction?

There are many cases in this State which bear some relation to the instant case, but for the most part they have to do with the sale of a profession or business. We have been unable to find any Indiana case directly bearing upon the questions here involved, although the principles laid down in the cases decided relative to negative covenants in business and professional contracts are pertinent here.

In the case of *O'Neal* v. *Hines* (1898), 145 Ind. 32, 35, 43 N. E. 946, the appellant and appellee were partners in the undertaking business in the city of Portland, and upon a consideration the appellant sold his interest to appellee and agreed not to re-enter the business so long as appellee remained in that business in Portland. Appellant breached the contract and appellee filed suit to enjoin him from engaging in said business in said city. The court said:

> "It is a general rule that when one has made a valid contract with another that he will not engage in a certain business or occupation, and it is shown by the other party to the contract that the same is being violated to his injury, he is entitled to an injunction restraining the offending party."

In the case of *Beatty* v. *Coble* (1895), 142 Ind. 329, 41 N. E. 590, the appellant and appellee were physicians at Spencer, they entered into a written contract whereby Goble upon a sufficient consideration agreed to quit practicing medicine at Spencer. Coble left Spencer for about eighteen months and then returned and entered the practice. The appellant brought suit to enjoin Coble from practicing at Spencer. The lower court found against the appellant, but this court reversed the cause, holding that the injunction should have been granted. The case of *Pickett* v. *Green* (1889), 120 Ind. 584, 22 N. E. 737, is very similar to the case of *Beatty* v. *Cole, supra.* The appellant and appellee were physicians at Albion, Indiana, and their contract was in substance the same as

the one in the above case, and this court held that the plaintiff was entitled to injunctive relief. In the case of *Baker* v. *Pottmeyer* (1881), 75 Ind. 451, appellee sold his ice business in the city of Logansport with a written agreement that he would not again enter said business in the city of Logansport. This agreement was breached by appellee, and this court held that the appellant was entitled to an injunction preventing appellee from conducting an ice business in the city of Logansport. In the case of *Eisel* v. *Hayes* (1894), 141 Ind. 41, 40 N. E. 119, it was held that a contract in restraint of trade, which prohibits the vendor of a meat shop and stock in trade from engaging in such business at any place nearer than eleven miles to the place where the shop was located, is not such restraint of trade as renders the contract void; that in such a contract the parties are presumed, as in case of any other contract, in the absence of fraud, to have determined the question of consideration for themselves, and the court will not determine its adequacy. See *Beard* v. *Dennis* (1855), 6 Ind. 200; *Duffy* v. *Shockey* (1858), 11 Ind. 70; *Thayer* v. *Younge* (1882), 86 Ind. 259; *Wiley* v. *Boumgardner* (1884), 97 Ind. 66; *Johnson* v. *Gwinn* (1885), 100 Ind. 466. All of the foregoing cases are based upon negative covenants relative to professional and business contracts and not to employment contracts.

While we find no case in this State relative to an employment contract, we find many in courts of last resort in other states, and which hold that agreements imposing restraints upon the right of an employee to engage in a competing service after the terminating of the contract of service are analogous to, and governed by, the same general rules applicable to restrictive covenants in the sale of business and good will.

Facts very similar to those in the instant case are

found in the case of *Deurling* v. *City Baking Co.* (1928), 155 Md. 280, 141 Atl. 542, 67 A. L. R. 993. The appellee was a baking company in Baltimore and drew business from routes extending from that city into its suburbs and elsewhere. A large portion of the business was conducted by drivers and salesmen assigned to particular routes and supplied with a list of customers, or prospective buyers in the assigned territory. The appellant had been an employee of the company for several years as one of its driver salesmen and had assigned to him certain territory. The appellant and appellee had entered into a contract whereby appellant agreed not to soilcit or sell products similar to those sold or offered for sale by the company in any territory covered by him for the company during the last six months of his employment, for three months after appellant left the employment of the company. The appellant left the employment of the company and within a few days entered the employment of another baking company and began trading with the customers of the appellee in the territory where he formerly sold for appellee. The court in passing upon the questions involved said (p. 287):

"The parties to this contract agreed to the restrictive covenant, and, if its terms are fair and reasonable, a court of equity should enforce its provisions by granting injunctive relief. The question of whether it is reasonable depends upon circumstances, the more important of which are: Is the purpose to be obtained a fair and conscionable one, will it do greater harm to the employee than good to the employer, and if it is reasonable as between the parties, does it so injuriously affect the public as to make it void as against public policy? The compensation paid the employee here was as well based upon his compliance with the restrictive covenant as his rendering service. The character of the service rendered, and which had been rendered by the appellant since 1916, was such as necessarily brought him into frequent if not daily con-

tact with the customers served with the appellee's products. The executive and managing officers of the appellee rarely, if ever, saw its customers, the personal contact being between the customers and the appellant, and for practical purposes they might well be said to be customers of the appellant rather than of the appellee. Knowing, from the nature of the business, that this was true, it was, in our judgment, entirely reasonable for the employer to include in the contract such a restrictive covenant, and the purpose or object to be secured fair and conscionable. . . . This is not a case of restricting an employee from getting subsequent employment by reason of his knowledge or skill acquired by experience in a similar business under a former employer, but is a case where the violation of his negative covenant enables him to sell his services to a competitor for a higher wage than he would naturally be able to obtain if he had not violated the covenant, and to the detriment and damage of his former employer."

The foregoing case is thoroughly annotated in 67 A. L. R. 993, and it would serve no purpose here to set out the cases cited.

In the case of *Chandler, Gardner & Williams* v. *Reynolds* (1924), 250 Mass. 309, 145 N. E. 476, we find the following state of facts: The appellee entered into a contract on July 1, 1922, with appellants to work for them as an assistant undertaker at $40.00 per week for a period of three months, and appellee agreed not to enter into, either directly or indirectly, as employee, manager, or proprietor, owner, stockholder, copartner, or otherwise in the City of Haverhill, Massachusetts, and vicinity in the same or similar business, which in any manner might be construed a competitive business of the appellants for a period of ten years. On September 26, 1922, the parties agreed that the contract entered into on July 1, 1922, shall be extended until cancelled by a thirty days' notice by either party and the wages were increased to $100.00 per week. This con-

tract was breached by the appellee. The court held that appellants were entitled to equitable relief against the appellee who, in violation of the terms of his agreement, had set up a competing undertaking business within fifty yards of appellant's place of business.

We find from an exhaustive reading of many of the cases cited in 67 A. L. R. 993, *supra,* and other cases that there is a general holding, in all modern judicial decisions, upon the question involved, that contracts between employer and employee in restraint of employment, where the restraint is reasonably necessary for the protection of the employer's business, and not unreasonably restrictive upon the rights of the employee and not against public policy, are valid.

In the instant case, under the facts as stated, we think that the restraint was reasonably necessary for the protection of the appellant and that it was not unreasonably restrictive upon the rights of the appellee, nor invalid as against public policy.

The demurrer of appellee to the complaint should have been overruled.

Judgment reversed.