TOLMAN LAUNDRY, INCORPORATED, *v.* GEORGE
W. WALKER

[No. 5, October Term, 1936.]

8

*Decided November 11, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHN-SON, JJ.

*Stedman Prescott,* with whom was *Charles E. Pledger, Jr.,* on the brief, for the appellant.

*Lansdale G. Sasscer* and *T. Van Clagett, Jr.,* for the appellee.

PARKE, J., delivered the opinion of the Court.

The Tolman Laundry, Incorporated, conducts a laundry, dry cleaning, rug cleaning, and linen supply business in the District of Columbia and certain adjacent territory in Maryland and Virginia. Its principal place of business is in Washington. The laundry has been engaged in its business for a number of years, during which it has acquired a number of regular patrons, who live along and in the neighborhood of fixed routes which the laundry has established in the District, Maryland, and

Virginia for the service of its customers. These routes are well defined and present and prospective patrons are listed and classified or solicited by the laundry with reference to the particular route by which they are or will be accommodated. The success of the enterprise depends upon keeping the good will and patronage of its customers, and obtaining new ones. The loyalty, personality, and efficiency of its servants who make collections and deliveries on the several routes were important factors in the laundry's success, since the employer's transactions with its customers were largely through the agency of the men who served the routes. Among these routes was one in the District of Columbia and Maryland which was known in the business as Route No. 5, and it covered a specified and limited territory. This route was valuable and was a source of great revenue to the laundry.

From April 2nd, 1920, to August 17th 1935, the defendant, George W. Walker, was employed by the laundry. He was engaged in serving Route 5 until January, 1932, when he became a supervisor for the laundry, and Route 5 was one of those under his supervision. In April, 1933, he returned to his former service, in which he continued to August 17th, 1935, when the defendant voluntarily severed his connection with the laundry pursuant to a provision of his contract. During his employment the defendant was furnished by the plaintiff with the names and addresses of all its customers along Route 5 and in its territory. Except for the brief period during which he was a supervisor, the defendant collected and delivered clothes, linen, and other articles which were to be or had been laundered; and, also, rugs and other things which were to be or had been dyed or dry cleaned for customers in the territory embraced by his route; sought and kept trade for his employer, and did any other thing incidental to the work in which he was engaged, including the collection of accounts. The nature of the business and the form of the defendant's employment brought him in personal contact with the customers of the route, and taught him the extent and

scope of the business done on his route, the requirements of every patron, the accommodations advisable, the dates on which the laundry was customarily collected and delivered, and the prices paid for the work, and the credit which was safe to give.

When the defendant stopped, he was under a written contract of employment. It was made on May 1st, 1933. In consideration of the employer supplying and maintaining an automobile truck for the defendant's use in the business, and of agreed salary and commissions at a specified rate, the defendant undertook the performance of a prescribed service for his master in a specified and delimited territory, which was known as Route No. 5 in the master's business, and agreed that he would not become a competitor nor perform a similar service for a competitor for the period of one year after his employment had ceased.

The bill of complaint was filed on September 20th, 1935, and set forth, in substance, what has been stated. The defendant, in addition, was charged with a continuous violation of his stated promise, to the great and irreparable injury of the plaintiff. The relief prayed was for both a temporary and a permanent injunction against the defendant in accordance with the terms of the agreement, and for other and further relief. A temporary injunction was accordingly issued on September 20th, 1935, upon a bond being filed and approved. The defendant answered, and moved for the rescission of the order and a dissolution of the injunction. The parties took testimony before an examiner in equity, and later testimony was taken in open court in support of a motion to charge the defendant with contempt for his alleged disobedience of the temporary injunction. The chancellor held the defendant had not been guilty of contempt, and discharged the rule laid on December 3rd, 1935. In his opinion, filed on December 31st, the chancellor disclosed that he had considered not only the testimony taken before the examiner in equity, but also that given in the citation for the alleged contempt, and it is assumed

that this is the reason why all the testimony is included in the record at bar. It is, however, clear that, while his obedience of the command of the writ of the temporary injunction will relieve the defendant of contempt, yet proof of such obedience does not go to any other issue.

The chancellor dissolved the preliminary injunction and dismissed the bill of complaint, without prejudice, and imposed the costs upon the plaintiff. The appeal is from this decree, and the questions are the validity of the defendant's negative covenant in restraint of employment; and, if valid, its meaning and whether it had been violated.

The covenant in question is in these words: "The said party of the second part also agrees that he will not at any time while he is in the employ of the said party of the first part, or within one year after leaving said service of the party of the first part, for himself or any person, persons or corporation other than the party of the first part, call for and deliver laundered and unlaundered goods, articles that are dry cleaned or dyed, or that are to be dry cleaned or dyed, rugs, cleaned and uncleaned, and linen supply in laundered and unlaundered condition to any person or persons, who, during the term of this contract, shall have been customers of said party of the first part, nor in any way, directly or indirectly, solicit, divert, take away, or attempt to solicit, divert or take away from said party during the life of this contract any of its custom, business or patronage of such customers, in that portion of the City of Washington, D. C. and Maryland, known as the 'laundry,' 'dry cleaning' or 'coat service' route or territory especially entrusted by said party of the first part to party of second part, and herein described."

When considered in connection with the subject-matter, the limitation in time and in space, the relation of the contracting parties, and the nature of duties of the servant, the quoted terms are valid. The principle is firmly established that contracts only in partial restraint of any particular trade or employment, if founded upon

a sufficient consideration, are valid and enforceable, if the restraint be confined within limits which are no larger and wider than the protection of the party with whom the contract is made may reasonably require. *Guerand v. Dandelet,* 32 Md. 561, 565-569; *Warfield v. Booth,* 33 Md. 63, 69, 70; *Brown v. Benzinger,* 118 Md. 29, 37, 38, 84 A. 79; *Kaliopulus v. Lumm,* 155 Md. 30, 36, 141 A. 404. Compare *Jones Cold Store Door Co. v. Jones,* 108 Md. 439, 445, 70 A. 88; *Rosenstein v. Zentz,* 118 Md. 564, 85 A. 675.

Here the nature of the employer's business or trade renders it peculiarly dependent not only upon the servant's fidelity and loyalty in the performance of his contractual obligations, and the maintenance of secrecy in his master's affairs, but also, after the term of employment is at an end, upon the servant's inability, within a defined time and space, to become, in his master's trade or business, a competitor, or to engage in a similar service as the servant or representative of a third party in competition with his former master in the designated locality. *Supra; Webb v. McCloskey,* 68 Md. 196, 200, 11 A. 715; *Underhill v. Buckman Fruit Co.,* 97 Md. 229, 245, 246, 54 A. 873; *Chenoweth v. Hoey,* 135 Md. 97, 104, 108 A. 478; *Anderson v. Truitt,* 158 Md. 193, 197-199, 148 A. 223.

The servant was paid a wage and a commission on the value of the business which he produced on his route. The customers and patronage thus secured were for the benefit of the employer, and the increased good will became the property of the master, however much their procurement was to be attributed to the servant's energy, personality, and skill. Since the servant was hired and rewarded to produce these results, the employer had the right to their enjoyment. It would be unjust for the servant, after the term of the service was over, to take from his employer what the employer had paid the servant to produce.

So, if an employer is engaged in a business which he carries on through agents or servants whose performance

of their duties involves a confidential knowledge of the employer's trade or business and brings them into such direct and personal business relation with the employer's business and its patrons that the agents or servants commonly acquire the names and residences of customers, their requirements, credit, and other trade or business information, or a personal following or clientele during the period of their service, then it is not injurious to the public, and it is reasonable, to permit the employer and the agent or servant to enter into an ancillary covenant in partial restraint of trade, to protect the employer's business from the competition of the servant for a reasonable length of time throughout a definite area. Such a covenant is but auxiliary to the principal promises of the contract, and is required to protect the covenantee in the enjoyment of the contemplated benefits of the contract during and after the time of the contract. 3 *Williston on Contracts*, Secs. 1637-1643, note 90, 1646. Thus in *Deuerling v. City Baking Company*, 155 Md. 280, at pages 283-293, 141 A. 542, the question at bar was thoroughly discussed and the law declared as has been stated. There is no occasion to repeat here what has been so recently said for the court after a consideration of the latest decisions. *Fulton Grand Laundry Co. v. Johnson*, 140 Md. 359, 363, 117 A. 753; *Burnham v. Burnham*, 153 Md. 147, 137 A. 860; *Id.*, 154 Md. 349, 140 A. 361. The following decisions of other jurisdictions may be cited in support of the validity of analogous restrictive covenants in contracts of employment between companies engaged in the business of a laundry and their routemen, salesmen, and drivers: *Capital Laundry Co. v. Vannozzi* (1933) 115 N. J. Eq. 26, 169 A. 554; *Owl Laundry Co. v. Banks* (1914) 83 N. J. Eq. 230, 89 A. 1055; *Ideal Laundry Co. v. Gugliemone* (1930) 107 N. J. Eq. 108, 151 A. 617; *Sherman v. Pfefferkorn* (1922) 241 Mass. 468, 135 N. E. 568; *Brannen v. Bouley* (1930) 272 Mass. 67, 172 N. E. 104; *Boston & Suburban Laundry Co. v. O'Reilly* (1925) 253 Mass. 94, 148 N. E. 373; *Jennings v. Shepherd Laundries Co.* (Tex. Civ. App. 1925) 276 S. W. 726; *Nat. Linen Service Corp. v. Glower*, 179 Ga. 136, 175 S. E. 460;

*Eureka Laundry Co. v. Long* (1911) 146 Wis. 205, 131 N. W. 412; and see, also, a valuable case and annotations in *Grand Union Tea Co. v. Walker* (Ind. Sup.) 195 N. E. 277, 98 A. L. R. 958, *et seq.; Granger v. Craven,* 159 Minn. 296, 199 N. W. 10.

The testimony is conclusive that when the defendant severed his relation with his master on August 17th, 1935, he became the servant of another corporation which was engaged in the same business as his former master. His position with his new employer was similar to his former one; and the defendant immediately began, for his own advantage as well as that of his new master, to call for and deliver unlaundered and laundered goods and other articles of a number of persons who were, during the period of his contract with the plaintiff, the customers of the plaintiff. There is testimony on the part of the plaintiff that about eighty-five customers withdrew their patronage from the plaintiff, and its business on Route No. 5 declined fifty per centum. The defendant himself was a witness, and stated that, between his leaving his position with the plaintiff and the filing of the bill of complaint, he had, in the service of his new master, which was a competitor of the old, collected the unlaundered articles from about fifty of his former master's customers on Route No. 5; and, after these things had been laundered by the new master, had delivered the articles to the parties from whom he had gathered them.

The court cannot agree with the construction that these acts were not a breach of the defendant's contract. Holding that it was a continuing and substantial breach, for which great and irreparable damages of an incalculable nature might result, the temporary injunction should have been made permanent for the year ensuing the day the defendant left his master's service. *Supra.*

Since the year following the end of the defendant's service has expired, the remedy of injunctive relief cannot be granted. If this were all that is involved, the appeal would be dismissed (*Dorsey v. Ennis,* 167 Md. 444, 447, 175 A. 192; *Thom v. Cook,* 113 Md. 85, 87, 77 A. 120; *Smith v. Warrenfeltz,* 116 Md. 116, 120, 81 A. 275; *Pub-*

lic Service Commn. v. Telephone Co., 147 Md. 279, 280, 128 A. 39; Potomac Edison Co. v. Public Service Commn., 165 Md. 458, 460, 169 A. 479. See Sheehy v. Thomas, 155 Md. 688, 693, 142 A. 506), with costs to the appellant (Baldwin v. C. & P. Tel. Co., 156 Md. 552, 557, 144 A. 703; Deuerling v. City Baking Company, 155 Md. 280, 283, 141 A. 542), as the termination of the period of one year had occurred after the decree and the appeal.

Notwithstanding the granting of a permanent injunction would now be nugatory, substantive rights remain for determination. When the temporary injunction was issued, the chancellor exacted a bond, with approved security, to indemnify the defendant for all costs and damages occasioned by the issuing of the temporary injunction in the event that the injunction be rescinded. So, if the primary right of the plaintiff to the writ of injuncton be not here determined, and, in consequence, the appeal be dismissed, the plaintiff has not prosecuted the cause with effect, and its and its surety's liability under the bond would become fixed for not only costs, but also the damages sustained by the denial to the defendant of the right to serve his new employer on the route the defendant traveled while in the employment of the plaintiff. On the other hand, the determination that the plaintiff was entitled to a permanent injunction would discharge the bond. So, a dismissal of the pending appeal cannot be made, since it continues to be a litigation between parties having adverse interests. Miller's Equity Proc. secs. 587, 588; Wallis v. Dilley, 7 Md. 237, 250; Hamilton v. State, 32 Md. 348, 353-354; Lange v. Wagner, 52 Md. 310, 320; Banks v. State, 62 Md. 88, 94, 95.

From the conclusions reached the decree of the chancellor will be reversed, with costs to the appellant. The cause will not be remanded, since the year during which the defendant engaged to abstain from competition is at an end.

> Decree reversed, without a remand, with costs above and below to be paid by the appellee.