92 P.2d 781

## NICHOLS v. ANDERSON.

### No. 4434.

Supreme Court of New Mexico.

June 5, 1939.

Rehearing Denied Aug. 1, 1939.

Nathaniel Lloyd, of Las Vegas, for appellant.

Luis E. Armijo, of Las Vegas, for appellee.

MABRY, Justice.

Plaintiff and appellee, F. W. Nichols, sued to restrain defendant and appellant, Melvin Anderson, from engaging in soliciting or delivering laundry or dry cleaning in the town of Las Vegas, and for damages in the sum of $500 for having so engaged in such business contrary to a contract theretofore made with plaintiff and appellee; and, in addition, he sought to recover the sum of $80.83 for collections made upon laundry deliveries for which no accounting was made to plaintiff and appellee. Defendant and appellant denied generally the allegations of plaintiff's complaint and by counterclaim sought to recover the sum of $100, the amount of a bond deposited with plaintiff

and appellee, as called for by the contract hereafter to be noticed.

The judgment was for plaintiff and appellee in the sum of $250 found to be the damages suffered by virtue of defendant's unlawful competition in violation of the contract in question; and, in addition, for $46.78 found by the Court to be due plaintiff and appellee from defendant and appellant for unaccounted for items for which appellant and defendant was chargeable under the contract.

For convenience, the parties will hereafter be referred to as plaintiff and defendant.

Plaintiff, Nichols, was the owner and operator of a laundry and dry cleaning establishment in the town of Las Vegas, and defendant was employed by him as an agent and employee to solicit business and make deliveries. Prior to the employment a contract was made and entered into by and between the parties which provided, among other things, that the employee, defendant, "will not at any time while employed by plaintiff, nor within one year after the termination of such employment, regardless of the time or cause of such termination, either for himself or for any other person, firm or corporation, other than his employer, or his successors, directly or indirectly, solicit, call for, or deliver articles to be cleaned, pressed, dyed or laundered, in the city or town of Las Vegas, or in any other territory in which the employee shall have served the employer under this contract, or any extension of this contract; and, that within

the aforementioned period of time, he, the employee, will in no manner attempt to induce any of the patrons or customers of the employer, his successors or assigns, to withdraw their patronage or custom." It was by the contract further agreed that the defendant should deposit with plaintiff, his employer, the sum of $100 as security for the faithful performance of the contract, which deposit was to be returned to the employee at the termination of the contract, with stipulated interest, "less any and all unpaid items."

It is alleged, and the proof is undisputed, that defendant did, after the termination of the contract of employment by mutual consent, engage in soliciting laundry and dry cleaning business on his own behalf in Las Vegas, as the owner and manager of a competing business, and prior to the expiration of the year from the time of the severance of the relation of employer and employee as between the parties. By mutual consent, the defendant left the employment of plaintiff on the 24th day of December, 1935. He immediately engaged in a competing business, soliciting from patrons of his former route, who patronized plaintiff as employer of defendant.

The Court found, and such findings are supported by abundant proof, that defendant did so engage as a competitor of plaintiff within the time so restricted by the contract in question.

Defendant urges that the contract is: (a) Contrary to public policy, and in re-

straint of trade, and should not be enforced; (b) and, in any event, there was no evidence to support the Court's finding that plaintiff had been damaged in the sum of $250 by defendant so engaging in such business; and (c) that defendant should have prevailed upon his claim for $100, as set out by his cross complaint.

Although defendant assigns as error and cites some authority upon the question that contracts in restraint of trade are against public policy and illegal and calls attention as well to Secs. 35-2901 to 35-2903, N.M.Comp.1929, as prohibiting contracts which operate to restrict trade and commerce, none of the authorities are in point. It is of course a well established rule that a naked agreement by one party not to engage in business in competition with another party is in contravention of public policy and therefore void, unless such agreement and restriction be incidental to some general or principal transaction. That is, its main object must not be to stifle competition. Gross, Kelly & Co. v. Bebo, 19 N.M. 495, 145 P. 480.

But, as was stated in Tolman Laundry, Inc., v. Walker, 171 Md. 7, 187 A. 836, 838: "The principle is firmly established that contracts only in partial restraint of any particular trade or employment, if founded upon a sufficient consideration, are valid and enforceable, if the restraint be confined within limits which are no larger and wider than the protection of the party with whom the contract is made may reasonably require." (Citing numerous authorities.)

We have held in a number of cases that an agreement to refrain from engaging in a certain business or profession within reasonable limits of time and place is valid if subsidiary to other legitimate purposes such as the sale or disposal of property, business or good will. Thomas v. Gavin, 15 N.M. 660, 110 P. 841; Gallup Electric Light Co. v. Pacific Improvement Co., 16 N.M. 86, 113 P. 848; Gross, Kelly & Co. v. Bebo, 19 N.M. 495, 145 P. 480; Gonzales v. Reynolds, 34 N.M. 35, 275 P. 922. The above statement from Tolman Laundry, Inc. v. Walker, supra, is quite universally recognized as the rule. Excelsior Laundry Co. v. Diehl et al., 32 N.M. 169, 252 P. 991; Eureka Laundry Co. v. Long, 1911, 146 Wis. 205, 131 N.W. 412, 35 L.R.A.,N.S., 119; Grand Union Tea Co. v. Walker, 208 Ind. 245, 195 N.E. 277, 98 A.L.R. 958, et seq.; Granger v. Craven, 159 Minn. 296, 199 N.W. 10, 52 A.L.R. 1356.

We hold that this contract, being only in partial restriction and restraint of trade and employment and founded upon sufficient consideration, and "being confined within limits which are no larger and wider than the protection of the party with whom the contract is made may reasonably require," is valid and enforceable.

We have next, the question of whether there was sufficient evidence to support the Court's finding that the counterclaim of defendant for $100 should not be allowed. Plaintiff, in his answer to the counterclaim, alleged that "during the time defendant worked for plaintiff that

the defendant withdrew and took out the full amount of $100.00." The evidence shows, and the Court so found, that the $100 was consumed or absorbed from time to time by charges made against it on account of amounts owing from defendant to plaintiff. Strictly speaking, there was not a "withdrawal," but there was, instead, an absorption of the full amount. The correctness of these charges against defendant which consumed the $100 deposit, cannot be challenged in view of the testimony adduced. Defendant perhaps relies upon there being a variance between the pleadings and the proof. We hold there is none. If the proof shows the money deposited was taken up either by withdrawals or by proper and legitimate charges made against it by virtue of monies collected and unaccounted for by defendant, or because of any other proper charge to be made against the said deposit, it answers the purpose and sustains the Court's finding that plaintiff is not indebted to defendant for and on account of the said deposit. Any variance between the pleadings and proof in this respect was slight and wholly harmless, and moreover, evidence as to how the $100 so deposited was absorbed was received without suggestion that there was present a question of variance.

We have next the question of whether there is substantial evidence to support the Court's finding that defendant is indebted to plaintiff under the second cause of action set out in plaintiff's complaint, in the sum of $46.78. This point will not be discussed further than to say that there is ample evidence to support the Court's finding that defendant was properly chargeable under his contract of employment, the agreement and practice of the parties, with uncollected or unaccounted for items totaling $80.83, from which defendant was allowed a credit and offset of $34.05, thus leaving a balance of $46.78 due plaintiff.

Appellant further complains of error in the Court's giving judgment for damages for breach of the contract, urging as a ground that in an equity suit damages are not properly allowable therein, and that he was thus deprived of his right to trial by jury upon a question and in a suit where the right obtains. There was no proper assignment of error upon this point; but, in any event, there is no merit in the contention. This is a suit in equity where the main relief sought was an injunction and where the damages alleged and proven were incidental to the main suit in injunction. Mogollon Gold & Copper Co. v. Stout, 14 N.M. 245, 91 P. 724.

It is next urged that even though defendant violated the terms of his contract of employment by engaging in business in competition with plaintiff contrary to the terms of his contract of employment, that there is no substantial evidence to support the Court's judgment for $250 which was allowed plaintiff for damages. This assignment presents a more difficult question. It is, of course, necessary that

damages claimed for breach of any contract be of the kind and character susceptible of proof, and the amount allowed must be subject to reasonable ascertainment.

Appellant cites authorities going to the question of the requirement for certainty, and urges that the evidence presented here was not sufficient to enable the Court to make any reasonably certain calculations. We recognize the rule to be that damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture or surmise, but as is pointed out in 15 Am.Jur. Par. 23, p. 414: "There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix the amount. Formerly the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage, and not as to its amount; and that where it is certain that damage has resulted mere uncertainty as to the amount will not preclude the right of recovery."

It has also been said that where in the nature of things and under the circumstances a breach of the contract would cause substantial damages an award is proper though the damages may not be computed with exactness, and "the basis for a rational estimate * * * was scanty." Parker v. Levin, 285 Mass. 125, 188 N.E. 502, 504, 90 A.L.R. 1446. And yet there must be some fairly rational and reasonable method of measuring such damages.

"Substantial damages cannot be recovered for injury to a business merely upon proof of diminution of gross receipts without anything to show the affect on profits. * * * But, without a showing of the profits which the appellants made, a judgment for damages cannot be based upon average receipts." St. Germain v. Bakery, etc. Union.—97 Wash. 282, 166 P. 665, L.R.A.1917F, 824.

Contracts of this character, with covenants of restrictions against employees who have access to the customer list of the employer, and who, by his contacts as solicitor, is in a position to take from his employer much of the business as a competitor, are common, and it is apparent that damages must occur upon violations where the former employee is active and perseveres in his efforts to build up a competing business. It might not be easy to calculate the exact loss, but it is possible to do so in many cases.

We stated in Gonzales v. Rivera, 37 N. M. 562, 25 P.2d 802, 803, a case which involved a determination of damages resulting from a competing business operating in violation of such a restrictive contract: "In the first place, we deem this such a case of wrongdoing that sound policy requires that the risk of estimating

the damages too high or too low should be thrown upon appellants."

Although more definite proof of damages might be desired, under the circumstances of the case the difficulty of proving with certain definiteness the extent of loss occasioned by competition of this character, is readily seen.

We hold that plaintiff's proof in this respect was sufficient to support the Court's finding that he had suffered damages in the sum allowed. This testimony shows that defendant did contact the clients and customers of plaintiff through route sheets containing names and addresses of all regular customers, to which he had access while employed by plaintiff; that as an employee of the laundry of plaintiff defendant was required to keep in contact with and to solicit and deliver work to such customers; that quite a number of regular customers carried on the route sheet assigned to defendant, while employed, were at once lost to plaintiff and served by defendant after defendant set up his competing dry cleaning business; that immediately after the severance of the relation between the parties and the establishment of the competing business by defendant, plaintiff's dry cleaning business decreased on an average of $30 to $40 a week; that the plaintiff could not get the work from some of his customers because, as some of them advised him, defendant, his competitor, was getting such business.

Plaintiff testified that he knew and could give the names of some customers he had lost to defendant from a list he had, but that he could not enumerate them offhand. There was no objection to this testimony, and no effort made to require plaintiff to produce the list or to be more explicit in his designation of the customers so lost to this competition.

The testimony of defendant himself showed that he had gone into the dry cleaning business and was getting business from wherever he could. There is no evidence to show that he even avoided contacting or taking customers from his former employer. He said simply that he was not trying to hurt plaintiff's business, but said "I merely tried to make a little business of my own, and tried to make a better living." The evidence is clear and convincing that the competing business, contrary to contract and agreement, was definitely set up by defendant. This was probably even before he left plaintiff's employment, but if not, certainly it was immediately thereafter, and that this was in Las Vegas, and that the business was solicited and came from that area and from many of the customers formerly served by plaintiff.

Finding no error the cause will be affirmed, and it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.