JOEST *v.* JOHN A. DENIE'S SONS CO.

(*Nashville*, December Term, 1938.)

Opinion filed April 1, 1939.

FITZHUGH, MURRAH & FITZHUGH, of Memphis, for complainant.

SAM TAUBENBLATT, LOUIS ZIMMERMAN, W. P. McDONALD, F. H. GAILOR, BARRY & LERNER, and JOHN A. OSOINACH, all of Memphis, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit to enjoin the foreclosure of a trust deed executed to secure a note from the complainant to the defendant. The indebtedness is admitted and amounts, with interest, to upwards of $4,000. The complainant claims an indebtedness from defendant to him in a sum much larger by way of damages for defendant's alleged breach of a contract existing between the parties. The chancellor decreed in favor of the complainant for a nominal damage of $1 and on defendant's cross bill entered a decree for it for $4,250, less $1, and for foreclosure of the mortgage unless the debt was paid within thirty days. The Court of Appeals affirmed the chancellor's decree and we have granted complainant's petition for *certiorari*.

The facts are these. The complainant owned and operated a gravel pit in Shelby County. The defendant was a large dealer in building supplies in Memphis. The parties had considerable previous dealings and on April 1, 1927, entered into a written contract whereby the complainant agreed to sell his sand and gravel exclusively to defendant at prices set out, for five years. Other provisions of the contract relevant to the present inquiry, complainant being party of the first part and defendant party of the second part, follow:

"The party of the First part agrees on conditions hereinafter stated, to sell, and the party of the Second part agrees to buy sand and gravel for delivery in the City of Memphis and shipment within a radius of one hundred fifty (150) miles of Memphis.

"The party of the First part will provide ample equip-

ment for the production of, and proper delivery, to handle sand and gravel orders in an expeditious manner, and the party of the Second part will provide adequate sales force to properly solicit sales for sand and gravel within the City of Memphis and adjacent territory.

"Party of the Second part will use its best endeavors at all times to dispose of the output of the plant of the party of the First part, however, does not obligate itself to sell any stipulated amount, as the sales of this material are regulated by business conditions controlling the demand and the market price;

"In the event the party of the Second part fails to sell the minimum of two thousand (2,000) yards of sand and gravel per month in any one year, the party of the First part may sell additional material independently of the party of the Second part at prices prevailing at that time, such sales must be made direct to the consumer, and charged through books of Second Party. The present prevailing prices on sand and gravel are as follows:

. . . . . .

"The party of the Second part agrees to sell sand and gravel at prices stipulated above, for which it is to be paid a commission of twelve and one-half (12½) per cent on the sale."

Quite a mass of proof was taken. Evidence introduced by complainant tended to show that the amount of sand and gravel taken by defendant was far short of complainant's production capacity and was far short of the demands of defendant's business; that defendant bought large quantities of sand and gravel from other concerns which the complainant was ready and willing to supply.

Evidence introduced by the defendant tended to show that it took all the complainant's sand and gravel pos-

sible to use in its business—all that complainant could supply. That it called for more sand and gravel than it could get from complainant, and in short that it had used its "best endeavors" to dispose of the output of complainant's plant.

The amount of sand and gravel taken by defendant from complainant's plant, also the production of complainant's plant, as will hereafter appear, did not approach 2,000 yards per month.

Considering this evidence, the chancellor found:

"After a full and careful consideration of the evidence in this cause, the Court is of opinion that the overwhelming preponderance of the evidence in this cause indicates that complainant's gravel was suitable for many types of building operations and was, in fact, satisfactorily used by many builders and contractors; and the Court, therefore, concludes with reference to the essential and material fact involved that defendant and cross-complainant John A. Denie's Sons Co., did not use its best endeavor at all times to dispose of the output of complainant's plant. It follows from the conclusion and finding of fact, and the preponderance of the evidence in this cause establishes, that defendant John A. Denie's Sons Co. did breach its contract with complainant."

Respecting this finding, the Court of Appeals said:

"For the purpose of disposition of what we think is the determinative question it may be assumed that the chancellor was correct in finding that the defendant did not use its best endeavors to dispose of the output of the complainant's plant and in this sense breached the contract."

The first question presented in argument is to

whether the foregoing amounts to a concurrent finding
of the chancellor and of the Court of Appeals. We think
such is its effect. The findings of the chancellor are
presumed to be correct in the Court of Appeals. These
are the facts of the case unless the Court of Appeals
finds that the evidence preponderates against the chan-
cellor's decree. Code, Section 10622. In absence of such
contrary finding by the Court of Appeals, the presump-
tion in favor of the chancellor's finding continues and
a concurrence of the Court of Appeals is implied. Only
"to the extent" that the findings of the chancellor and
the findings of the Court of Appeals "do not concur" are
they "open to examination" in the Supreme Court. Code,
Section 10620; *Miller* v. *Kendrick*, 153 Tenn., 596, 285
S. W., 51; *Cooley* v. *East and West Ins. Co.*, 166 Tenn.,
405, 408, 61 S. W. (2d), 656.

We may add that we have carefully gone over all the
evidence and think that the chancellor's findings are
abundantly sustained, no doubt, as he says, by a prepon-
derance of the proof.

While the chancellor found that defendant had
breached its contract, he thought that the damages were
too speculative, too uncertain, to be ascertained, and
awarded the complainant only nominal damages. The
Court of Appeals, while apparently approving this con-
clusion of the chancellor, thought that the case was deter-
mined by the provision of the contract that defendant
"does not obligate itself to sell any stipulated amount."
The Court of Appeals assimilated the case to what are
known as "the will, wish or want cases" in which the
rule is that "A contract for the future delivery of per-
sonal property is void, for want of consideration and
mutuality, if the quantity to be delivered is conditioned

by the will, wish, or want of one of the parties; but it may be sustained if the quantity is ascertainable otherwise with reasonable certainty.'' This rule of law is sustained by *Willard Sutherland & Co.* v. *United States*, 262 U. S., 489, 43 S. Ct., 592, 67 L. Ed., 1086; *Cold Blast Transportation Co.* v. *Kansas City Bolt, Etc., Co.*, 8 Cir., 114 F., 77, at page 81, 57 L. R. A., 696, and many cases collected in 13 C. J., 339.

We do not agree that the rule of these cases is here applicable. The case before us is more like those in which the buyer agrees to buy all he requires, or the seller agrees to sell all that he produces. Contracts of this sort are upheld by the great weight of authority. 2 Williston on Sales, section 464, page 1170, where many decisions to this effect are collated.

■ The defendant here did not agree to buy all the sand and gravel it required from complainant for defendant's requirements largely exceeded complainant's possible output. The defendant did not bind itself to take any stipulated amount of sand and gravel because, as explained in the contract ''sales of this material are regulated by business conditions controlling the demand and the market price.'' We think, however, the defendant did bind itself to take all of the complainant's product that by the use of its ''best endeavors'' it could use in supplying the demands of its customers. All that it could use in its business to the satisfaction of its trade. It was not intended by the parties to leave it wholly optional with defendant as to whether it should take any sand and gravel under this contract.

The defendant, in our opinion, assumed a definite obligation in this contract and a breach of the contract by defendant has been established in the lower courts. This

brings us to the consideration of the chancellor's conclusion that the damages claimed by complainant are too uncertain to be ascertained. On this point the chancellor said:

"Applying the principles set out in the above quotation to the particular facts and circumstances of this, this Court is unable to determine with sufficient certainty from the evidence adduced in this cause, or which could be adduced if a reference were ordered, what amount of gravel could and should have been sold from complainant's plant by defendant if it had used its best endeavors at all times to dispose of the output of complainant's plant, what amount of gravel would have constituted the output of complainant's plant under those circumstances, what profit complainant would have realized in such event, nor what amount by way of mitigation or offset defendant would be entitled to have allowed, because complainant continued to own the gravel not produced and sold. Under these circumstances, the Court is of opinion that all complainant is entitled to recover as damages for breach of the contract here involved is nominal damages."

The measure of damages, if any are to be allowed, is indicated by *Gardner* v. *Deeds & Hirsig*, 116 Tenn., 128, 92 S. W., 518, 4 L. R. A. (N. S.), 740, 7 Ann. Cas., 1172, and that line of cases. That is to say, profits of the operation.

We think it was erroneous to say that the complainant should be charged with the value of the sand and gravel not mined—materials retained. Where the measure of damages for the buyer's breach is the seller's profits, the seller is not charged with materials retained. True, the seller would have lost the material if the con-

tract had been performed, but he would have gotten the value of the material in the selling price—cost plus profit.

The complainant figures his damages as shown in the following table:

| | | Total Denie's sold in yards year | 600 yds. mo. or 25 yds. per day | Damage short of 600 yds. per mo. | Clear per yd. | Each year Total Damage |
|---|---|---|---|---|---|---|
| 1927 | 9 | 3939 | 5400 | 2461 | 90c | $ 2,214.90 |
| 1928 | 12 | 5402 | 7200 | 1798 | " | 1,618.20 |
| 1929 | 12 | 3400 | 7200 | 3800 | " | 3,420.00 |
| 1930 | 8 | 1829 | 4800 | 2971 | " | 2,673.90 |
| | | | | | | 9,927.00 |
| 1931 | 12 | 2352½ | 7200 | 4847½ | 70c | 3,393.25 |
| 1932 | 3 | 442½ | 1800 | 1032¾ | " | 950.43 |
| | | | | | | $14,270.68 |

Fixing his profit at 90c per yard for the first four years of the contract and 70c per yard for the last year, and multiplying by the number of yards of available sand and gravel which defendant should have taken and did not take, complainant says that his damages amount to $14,-270.68. The complainant's figures as to the profit of his operations are not contradicted, and, as heretofore stated, this contract was to cover a period of five years. There is no contradiction, either, of the complainant's figures as to the number of yards of sand and gravel actually taken by the defendant.

The complainant's figures as to the production capacity of his plant and as to the amount of his product defendant could have used are sharply challenged. It must be admitted that an accurate computation of the last two items is involved in difficulty.

The complainant had a small plant. Little of his equipment was modern. Witnesses differ widely as to the capacity of the plant. The premises were subject to overflow in high water and the machinery, being old, was

subject to breakdowns. We are not convinced that the complainant could have maintained a production of 25 yards of sand and gravel per day for 24 days each month during the five-year period, as he claims.

Neither are we satisfied that defendant by reasonable endeavors or efforts could have steadily used this much of complainant's product. The defendant was a very large dealer. It had some orders too large to be promptly supplied by the complainant. Defendant could not mix the complainant's sand and gravel with other sand and gravel, as the proof indicates that no two beds of sand and gravel have the same color.

However, the weight of the proof shows that complainant's product was of good quality and could have been used in any character of construction work.

The defendant took 5,402 yards of sand and gravel from complainant in 1928. We are satisfied that it could have used that much in 1927 and in 1929, not figuring 1930 and 1931 after the depression set in. Yet defendant took only 3,929 yards of sand and gravel from the complainant in 1927, or 1,473 yards less than it took in 1928. It took 3,400 yards from complainant in 1929, or 2,002 yards less than it took in 1928. In 1927 defendant took 8,825.65 tons of sand and gravel from one other dealer, Missouri Portland Cement Company, a ton of sand and gravel being considerably more than a yard. From January 26, 1927, to January 19, 1928, the defendant took 22,583.70 tons of sand and gravel from the Wolf River Sand and Gravel Company. On this lot the defendant got a rebate of 10c a ton or something over $2,000. In 1929 the defendant took 4,379.45 tons of sand and gravel from Missouri Portland Cement Company and 12,000 yards of gravel from Raleigh Sand and Gravel Company.

Defendant's business did not fold up after 1929. In 1930 it took 9,218.74 tons of sand and gravel from Missouri Portland Cement Company and 1,827 yards from the complainant itself.

From the foregoing it seems entirely clear to us that the defendant might, by a reasonable effort, have used at least 4,000 or 5,000 yards of complainant's product during the life of this contract, which it failed to use and for which it did not call. Proof introduced by the complainant is ample to show that it was able to supply such increased demand.

As heretofore set out, there is no contradiction of the complainant's proof as to the profit of his operations. Had the defendant taken from complainant, over the period of this contract, as much as 4,000 yards more than it did take, the complainant would have earned a sum equal to the defendant's claim against him. About $1,000 of the defendant's claim is interest and if it had bought from complainant in the quantities it should have done and retained out of payments due complainant sums to be applied on the indebtedness, as it was entitled to do under the contract, much of this interest would not have accrued.

The defendant comes into this court of equity as a cross-complainant, seeking a decree on its note and a decree authorizing foreclosure. The chancellor's decree recites that the case was heard before him, among other pleadings, on "the cross bill of said defendant, the answer to the cross bill." The answer has not been copied into the record but we assume its contents corresponded with the statements of the original bill. As a cross-complainant, we think the defendant should be repelled. That the pleadings and the proof establish sufficient equi-

ties in the complainant's favor to defeat relief on the cross bill. So that it be said that the matter is too indefinite and uncertain to authorize a decree in favor of the complainant for a specific sum in damages, still the equities apparent from this record are nevertheless sufficiently strong, invoked defensively, to preclude any relief for the cross-complainant.

The defendant relies on that provision of the contract that "in the event the party of the Second part fails to sell the minimum of two thousand (2,000) yards of sand and gravel per month in any one year, the party of the First part may sell additional material independently of the party of the Second part at prices prevailing at that time, such sales must be made direct to the consumer, and charged through books of Second Party."

The argument is that the foregoing provision indicates a method provided by the parties for the protection of the seller in the event the minimum was not taken and that this provision was in lieu of any right on the part of complainant to claim damages for a breach. We cannot so construe the contract.

The quoted provision was manifestly inserted for the benefit of complainant. It was optional with complainant to rely on this provision or not, as he chose. The statement in the brief that complainant exercised the right to sell to others is not established. There is very little proof on this question. There is some suggestion in the proof offered by defendant that complainant did sell sand and gravel to others but the complainant Joest unequivocally testifies that he made no such sales until after the expiration of the five-year period covered by the contract.

Moreover, we think a defense of this nature should be specially pleaded and there is nothing of the

sort in the defendant's answer to the original bill or in its cross bill.

The authorities cited by complainant in this connection —*Commercial Realty & Const. Co.* v. *Dorsey*, 114 Md., 172, 78 A., 1099; *Kelp Ore Remedies Co.* v. *Brooten*, 129 Or., 357, 277 P., 716; *William W. Bierce* v. *Hutchens*, 205 U. S., 340, 27 S. Ct., 524, 51 L. Ed., 828—are not in point. In *Commercial Realty & Construction Co.* v. *Dorsey, supra,* and in *William W. Bierce* v. *Hutchins, supra,* there was an election on the part of the plaintiff to pursue his alternative remedy. In *Kelp Ore Remedies Co.* v. *Brooten, supra,* the provision for an alternative remedy was held to be in favor of the defendant, not available to the plaintiff, and the plaintiff was successful in its appeal.

We do not find any construction by the parties of this contract which would bar the complainant from relying on the defenses we have here held available to him. Both he and his bookkeeper testified that they were constantly asking the defendant to give complainant more orders and that complainant was ready and willing to fill these orders. Necessarily the chancellor's finding that defendant had breached its contract resolves the controversy about this particular matter in favor of the complainant.

It results that a decree will be entered here dismissing the cross bill, and the costs of the cause will be divided between the parties. The bill will be sustained to the extent that it seeks an injunction to enjoin collection of the note and enforcement of the mortgage.