354 P.2d 137

Geraldine YARBOROUGH, Plaintiff-Appellee,

v.

Roger L. HARKEY and Jeanette Harkey, Defendants-Appellants.

No. 6665.

Supreme Court of New Mexico.

June 30, 1960.

Frazier & Cusack, Roswell, for appellants.

John Jennings, Roswell, for appellee.

COMPTON, Justice.

This is an action for breach of contract. Appellee, plaintiff below, is the holder of the "Tastee Freez" franchise in an area which includes the City of Roswell. Appellants, defendants below, own and operate a Tastee Freez business at 1313 North Main Street in Roswell, having purchased the business from William C. Hamlin.

Plaintiff's complaint alleged that the defendants had indicated their intention of terminating their franchise agreement with her, that she did not consent to such termination, that she was ready, willing and able to perform her obligations under the contract, that the average monthly payments to her from the defendants amounted to $125.16, and that by reason of the defendants' breach of contract she will be damaged in the amount of $8,636.04 resulting from the loss of royalty payments. Plaintiff also sought certain injunctive relief.

There are a number of written instruments involved in this case and its ultimate disposition depends primarily upon a proper interpretation of the provisions in these instruments. We will discuss them briefly.

First, there is a franchise or operating agreement entered into between the plaintiff and the defendants on February 9, 1955. Under the terms of this contract, the plaintiff leased to the defendants for a ten-year period two Tastee Freez automatic feeders at a $1 per month per feeder rental. At the end of the ten-year period either party could terminate the agreement by so notifying the other party in writing thirty days prior to the conclusion of the ten-year term. The contract provided that the feeders would be located on the premises at 1313 North Main Street in Roswell, and that they would not be removed therefrom. The contract stated that the feeders are the property of the Harlee

Manufacturing Company of Chicago, Illinois, and that the contract is made subject to the terms of the franchise agreement between the plaintiff and the Harlee Manufacturing Company. Defendants agreed to use the automatic feeders solely in conjunction with Harlee freezers. Defendants also agreed not to use the name Tastee Freez in connection with the sale of any product except those processed through the leased Harlee feeders. Plaintiff was given a right to purchase the Harlee freezers and special topping cabinets upon cancellation of the operating agreement. Plaintiff agreed to make available to the defendants certain equipment and supplies.

Defendants agreed to sell only Tastee Freez products from the premises and they further agreed that the contract would not be assigned without the written consent of the plaintiff. Defendants further agreed that they would keep the premises open for business for a maximum of ten months in every year and during the period of ten months on each and every day thereof during the hours from eleven to eleven, and they agreed that failure to open the store for regular store hours for any two consecutive days should be considered as a default on their part, and that the plaintiff could, upon such default, cancel the agreement. Defendants agreed to pay the plaintiff a royalty of 30 cents per gallon of mix purchased. The agreement provided that

in the event the defendants ceased to engage in the sale of Tastee Freez products from the premises for any reason whatsoever, the agreement would forthwith terminate.

The second pertinent instrument is a sales agreement entered into on February 7, 1955, between the defendants and the then owner of the Tastee Freez business at 1313 North Main, Mr. William C. Hamlin. Hamlin agreed to dispose of the business and all fixtures, equipment and supplies appurtenant thereto in consideration of $14,000, stating that the equipment and fixtures included in the transaction were those itemized on a list attached to the contract and made a part thereof. Defendants agreed that no major changes would be made in the business until such time as Hamlin had been paid in full. Included in the transaction was the lease to the premises which Hamlin held from the New Mexico Military Institute. This lease was assigned to defendants and plaintiff jointly. The agreement also provided that in the event of a default by the defendants, the plaintiff could correct the default and assume the defendants' position under this contract. Plaintiff signed "acceptable" on this agreement.

The third pertinent instrument is an agreement entered into between plaintiff and defendants on February 7, 1955. This agreement made reference to the sales contract between Hamlin and the defendants

and stated that the plaintiff had advanced $3,000 to the defendants so that they could consummate the purchase of the business from Hamlin. It also stated that the defendants had assumed an $839 indebtedness due the plaintiff from Hamlin and that they had executed a promissory note to the plaintiff in the amount of some $3,839.

In consideration of this loan, defendants agreed that they would not sell or dispose of the Tastee Freez business without the written consent of the plaintiff approving such sale or disposition.

Defendants admitted that they had notified the plaintiff that the franchise agreement would be terminated May 1, 1959. They also admitted that they had discontinued the use of Tastee Freez products and had placed a sign with the name "Queen Bee" on the premises. They further admitted that they had discontinued the use of the Tastee Freez feeders.

Defendants' first point, and it is interwoven throughout their brief, is that the operating agreement between the plaintiff and themselves terminated when they voluntarily ceased to engage in the sale of Tastee Freez products and that they incurred no liability for such termination. To support this contention, defendants rely on the provision in the operating agreement which states:

"In the event Lessee ceases to engage in the sale of Tastee Freez products from said premises for any reason whatsoever, this agreement shall forthwith terminate."

The trial court viewed the operating agreement in its entirety and made, among others, the following findings:

"3. That on February 9, 1955, the Plaintiff and the Defendants entered into an agreement, admitted in evidence as Plaintiff's Exhibit No. 3, for a period of ten years from that date by the terms of which the Plaintiff, in addition to the performance of certain covenants and undertakings on her part, leased to the Defendants two Tastee Freez automatic feeders which were to be, and which were, installed in the premises located at 1313 North Main Street in the City of Roswell in exchange for the payment to her of a thirty-cent royalty for each gallon of mix processed by the Defendants and for the performance of each covenant and undertaking on their part for the period of the agreement."

"4. That among the covenants and undertakings of the Defendants in the agreement referred to in Paragraph 3 hereinabove was a covenant and undertaking 'to sell from the premises aforesaid only Tastee Freez products and use and sell from or on the premises

only such other products as the Lessor may from time to time in writing approve.' "

"5. That on or about the 31st day of March, 1959, and prior to end of the initial ten year period of the agreement referred to in Paragraph 3 hereinabove, the defendants in writing declared an intention unilaterally to terminate such agreement effective the 1st day of May, 1959, and that on such 1st day of May they ceased to perform further under such agreement, and that since that time they have commenced, and are, selling a competing soft ice cream product from and on the premises located at 1313 North Main Street in the City of Roswell."

Based upon these findings, the trial court's third conclusion of law was as follows:

"3. That the Defendants have breached their agreement with the Plaintiff referred to in Paragraph 3 of the hereinabove Findings of Fact and that the Plaintiff is entitled to recover of the Defendants damages for loss of royalties to the amount of $125.16 per month from May 1, 1959 to August 12, 1962, the expiration date of the existing lease on the premises."

We believe that the trial court was correct in finding and concluding as it did.

The operating agreement also contained the following provision:

"To sell from the premises aforesaid only Tastee Freez products and use and sell from or on the premises only such other products as the Lessor may from time to time in writing approve."

The effect given by the trial court to this provision, upon which defendants rely, is that it simply relieved the plaintiff of any further obligations under the contract when the defendants ceased to sell Tastee Freez products, and that such cessation by the defendants constituted a breach of the contract. We believe such interpretation was correct.

In regard to such "null and void" provisions, and that is what the termination clause amounts to, 3 Corbin on Contracts has the following to say at page 932:

"Frequently there is included in a contract an express provision to the effect that if payments are not made exactly as agreed, or if clear title is not made by a stated time, or if some other performance by one of the parties is not rendered, the contract shall be 'null and void.' Such a provision as this seldom means what it appears to say. Generally, what is meant is that the duty of one of the parties shall be conditional on the making of payment, or the tender of perfect title,

or the rendition of other specified performance, by the other party exactly as agreed. If such a provision as this is held to mean just what it says, the contract would in effect be an 'option' contract, the option being in the party who is to pay, or to convey, or to render the performance on a failure of which the contract is to be 'null and void.' If he concludes that the contract is not to his advantage, all that he needs to do is to withhold payment; whereupon the contract becomes 'null and void' and incapable of enforcement by either party.

"Accompanying factors on which interpretation must always be largely dependent, will almost always show that the parties did not use 'null and void' with such a meaning. *The provision is put in to limit the duty of the promisor to whom payment, or the conveyance, or other performance, is to be rendered; it is not to give a loop-hole of escape from the contract to the other party*." (Emphasis added.)

At 6 Corbin on Contracts at page 48 appears the following:

"Contracts frequently contain a provision that on failure to render some specified performance by one party the contract shall be 'null and void.' Usually, the purpose of such a provision is to make the duty of the other party

conditional on the rendition of the specified performance; it is not to give the first party the privilege of not rendering the specified performance."

In Murray v. Edes Manufacturing Co., 309 Mass. 395, 35 N.E.2d 203, 205, the defendant was sued for the amount of a promised royalty payment. As a defense, the defendant relied on the following provision in the contract, "It is agreed that if the said Corporation (the defendant) shall fail to pay to the said Murray as royalties * * * then this contract shall become null and void and the right to manufacture shall automatically revert to the said Murray."

The defendant contended that the above provision gave him the option of paying the prescribed royalty or terminating the contract by non-payment. The court held that the provision gave only the plaintiff the privilege of terminating performance in the case of non-payment; that it did not give the defendant the privilege of not paying without liability. Such a construction, the court concluded, would allow the defendant to take advantage of its own default.

So, we believe the provision in the operating agreement upon which defendants rely was for the sole benefit of the plaintiff. Kelp Ore Remedies Corporation v. Brooten, 129 Or. 357, 277 P. 716; 3 Williston on Contracts, § 746; see Alexander v. Wingett, 63 Mont. 254, 206 P. 1088; Burns

Mortgage Co., Inc. v. Schwartz, 3 Cir., 72 F.2d 991.

As the court stated in Vickers v. Electrozone Com. Co., 66 N.J.L. 9, 48 A. 606, at page 607:

"It would be an extraordinary construction of this agreement to make it confer upon a party the power to make his own default in not performing his part of the agreement a discharge of his obligation to perform it."

Defendants' second point is that the plaintiff is estopped to interfere with any changes defendants desire to make in the business including termination of the sale of Tastee Freez products. Their rationale under this point is that the sales agreement between Hamlin and themselves provided that they would make no major changes in the business until Hamlin had been paid in full, and since he has been paid in full and since the plaintiff wrote "acceptable" on this agreement, she is now estopped from questioning major changes in the business including the cessation of the sale of Tastee Freez products.

The fallacy in this argument is that the defendants are ignoring certain provisions of the operating agreement between themselves and the plaintiff and are looking at the agreement they executed with Hamlin in seeking to find justification for their action. The provision in regard to "major business changes" was obviously placed in the sales contract to protect Hamlin as the seller. For her protection, the plaintiff had the operating agreement, which provided, among other things, that the defendants were "to sell from the premises aforesaid only Tastee Freez products and use and sell from or on the premises only such other products as the Lessor may from time to time in writing approve."

Defendants also argue under this point that the two Harlee Tastee Freez automatic feeders which the plaintiff leased to the defendants had actually been sold by her to Hamlin who in turn had sold them to the defendants, and thus she is estopped from questioning the defendants' ownership of these feeders.

This contention is without merit. The feeders are not mentioned in the itemized bill of sale from the plaintiff to Hamlin. And the equipment and fixtures sold by Hamlin to the defendants were itemized on a list attached to the sales agreement and the feeders do not appear on this list. This is quite understandable since the operating agreement between the plaintiff and the defendants clearly states that the feeders are owned by the Harlee Manufacturing Company. Plaintiff, as the holder of a franchise from the Harlee Manufacturing Company, leased these two Harlee Tastee Freez automatic feeders to the defendants for a term of ten years.

Findings 12 and 13 by the trial court are as follows:

"12. That on the 7th day of February, 1955, the defendants and William C. Hamlin, the then owner of the Tastee Freez business and licensee of the plaintiff and lessee of the premises located at 1313 North Main Street in the City of Roswell, with the approval of the plaintiff, entered into an agreement, submitted in evidence as Plaintiff's Exhibit No. 1 for the sale of the business to the defendants and for assignment of the lease of the premises to the defendants and the plaintiff.

"13. That the purpose in the agreement referred to in Paragraph 12 hereinabove in creating an interest in her in the lease-hold of the premises located at 1313 North Main Street in the City of Roswell was to enable her as franchisee of the trade mark and trade name, 'Tastee Freez', to maintain an outlet for those products and to promote and protect the Tastee Freez good will developed by the commerce in Tastee Freez products on and from the premises."

Defendants challenge the sufficiency of the evidence to support the trial court's finding No. 13. They urge that the agreements between the parties speak for themselves and that no such purpose as is mentioned in finding 13 appears in any of the agreements; and further, that any secret purpose that the plaintiff may have had in her mind, which was not conveyed to defendants and was not incorporated in the agreements between the parties, is not binding upon the defendants.

We cannot agree that finding 13 is contrary to the express contract provisions. The sales agreement referred to states as follows:

"Included in this transaction is the lease which the seller holds from New Mexico Military Institute, and which is to be assigned to the buyers *and Geraldine Yarborough.*" (Emphasis added.)

Quite clearly then the sales contract creates an interest in the leasehold in the plaintiff, Geraldine Yarborough, for all purposes, so that this finding of fact cannot be said to be contrary to the provisions of the contract.

Nor do we agree that finding No. 13 is not supported by substantial evidence. On direct examination the plaintiff testified as follows:

"Q. There is a provision in the instrument that included in the transaction there is an assignment of the lease from Bill Hamlin to the Harkeys and yourself? A. Yes.

"Q. Now, what was the purpose of that? Who had that provision placed in the instrument? A. Well, I asked that it be placed in the instrument.

"Q. And what was the purpose of that? A. So that I would have control of the location of the premises.

"Q. Why did you have to have control over those premises? A. Well, you need control of the premises for several reasons. In the first place you need control of the premises to keep them from going out of Tastee Freez, and you need control of the premises so that you can keep it in a high standard like we try to keep all of our Tastee Freez stores."

The testimony of witness Hamlin and witness Bean corroborated, to some extent, the plaintiff's testimony on this point, although this corroborating evidence was somewhat speculative.

In our opinion, a breach of the operating contract by the defendants was established notwithstanding any terms that may have been contained in the sales agreement between Hamlin and the defendants. Be this as it may, the trial court's finding No. 13 is supported by substantial evidence.

Defendants contend that the trial court erred in refusing to quiet title to the lease from the New Mexico Military Institute in them as against any adverse claims by the plaintiff.

■ The judgment against the defendants in this case is for total breach of contract. No cross-appeal having been taken on the issue of damages, the plaintiff has no further interest in the business located at 1313 North Main Street in Roswell. However, the plaintiff is a tenant in common with the defendants of the leasehold estate under the assignment by Hamlin. The initial term of this lease does not expire until August, 1962, and the minimum rental is $100 per month. Should the defendants default on payment of rental, the plaintiff would be liable for such payments as she recognized in her testimony. See Kaye v. Cooper Grocery Co., 63 N.M. 36, 312 P.2d 798. This being the case, we conclude that the court did not err in refusing this requested conclusion of law by the defendants.

Defendants were unsuccessful in their $5,256 counterclaim. The basis of the counterclaim is that the operating agreement entered into between the plaintiff and the defendants violates the "Monopoly Statutes" and thus defendants are entitled to recover all moneys paid by them to the plaintiff as royalties under the operating agreement.

■ The operating agreement between the plaintiff and the defendants does not, in our opinion, violate § 49–1–1, NMSA 1953 Comp., relating to contracts in restraint of trade. It is true that one of the purposes of the operating agreement was to prevent the sale of products competing with Tastee Freez from the premises in question. But if such arrangement was in

fact in restraint of trade, it was a partial and reasonable restraint. The restriction applied only to the sale of competitive products from the location at 1313 North Main Street, although the defendants were to purchase all the mix that they required from the plaintiff. 36 Am.Jur., Monopolies, § 8; Twaddell v. H. O. Wooten Co., 130 Tex. 42, 106 S.W.2d 266; see Excelsior Laundry Co. v. Diehl, 32 N.M. 169, 252 P. 991; Nichols v. Anderson, 43 N.M. 296, 92 P.2d 781.

We think the proper rule is that set forth in 36 Am.Jur., Monopolies, § 36, as follows:

"It is generally held that a contract creating an exclusive agency for the sale on commission of a given commodity in a specified territory, and binding the agent not to sell the goods of any other manufacturers, is not within the condemnation of either the common law or of the state or Federal anti-trust acts."

Defendants also contend that the court erred in refusing to make their requested finding No. 6. This requested finding concerns the agreement between the plaintiff and the defendants relative to the $3,000 indebtedness which defendants owed the plaintiff. No error was committed in this regard since this matter was fully and correctly covered by the court's finding No. 11.

It is the contention of the defendants that the court erred in refusing to make their requested finding No. 10. This requested finding is, in substance, that the two automatic feeders covered by the operating agreement were physically attached to the Harlee freezers, and that the defendants took possession of the equipment in that condition. This requested finding is neither material nor relevant. While the feeders and freezers were physically connected during the time of the agreements in question, the fact remains that the freezers were sold to the defendants by Hamlin and the feeders were only leased to the defendants by the plaintiff.

Defendants urge that the court erred in refusing to make their requested finding No. 4. This requested finding is as follows:

"That under date of April 6, 1953, Plaintiff executed a bill of sale to William C. Hamlin for two Harlee freezers and other equipment, which is part of the property involved herein."

Defendants argue under this point that since they purchased the Harlee freezers outright, which the plaintiff does not deny, the plaintiff has no right to insist that she be allowed to purchase these freezers in accordance with the express terms of the operating agreement. The argument is without merit.

Whether or not the defendants had purchased the Harlee freezers has nothing whatever to do with the right of purchase granted to the plaintiff, which right the defendants gave her no opportunity to exercise.

■ The trial court found, and correctly so, that under the terms of the operating agreement the plaintiff had the right to purchase the Harlee freezers and special topping cabinet at a price to be determined by a depreciation schedule in the agreement, but that the defendants disposed of the freezers without giving the plaintiff an opportunity to purchase them. Accordingly, the court decreed that these items be tendered to the plaintiff for purchase in accordance with the terms of the operating agreement.

But as the court found, and as the evidence establishes, the freezers had already been disposed of by the defendants; they had been traded for other freezers. The required tender being impossible of performance, that portion of the judgment so requiring was error. 5 Williston on Contracts, § 1422. See Mundy v. Irwin, 20 N.M. 43, 145 P. 1080.

Nor did the plaintiff prove any damages for this particular breach of contract. While a "depreciation formula" was set out in the operating agreement, there is no evidence in the record as to the price paid by the defendants for the freezers. Such information is essential to use of the formula, since the price the plaintiff was to pay for the freezers was to be a percentage of the price paid by the defendants. Hase v. Summers, 35 N.M. 274, 295 P. 293.

The cause is remanded to the trial court with a direction to delete that portion of the order requiring tender of the freezers to the plaintiff. In all other respects the judgment is affirmed.

It is so ordered.

McGHEE, C. J., and CARMODY, MOISE and CHAVEZ, Jr., JJ., concur.