**CAPITOL CITY OFFICE MACHINES,**
**Plaintiff-Appellant,**

v.

**METROPOLITAN BOARD OF EDUCA-**
**TION, Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section.

Feb. 18, 1982.

Permission to Appeal Denied by Supreme
Court April 26, 1982.

John M. L. Brown, Stephan D. Karr,
Nashville, for plaintiff-appellant.

William F. Howard, Metropolitan Atty.,
The Dept. of Law of the Metropolitan
Government of Nashville and Davidson
County, Nashville, for defendant-appellee.

OPINION

LEWIS, Judge.

The issues presented for our determination are whether the defendant Metropolitan Board of Education (Board) breached an enforceable contract with plaintiff Capitol City Office Machines (Capitol) and, if so, is Capitol entitled to recover lost profits occasioned by the breach.

On April 22, 1980, the Board issued an Invitation to Bid on a contract to furnish 136 typewriters for use in the Metropolitan Nashville schools. The contract also provided that the Board would receive credit for 205 typewriters to be traded to the party awarded the contract.

Seven sealed bids were publicly opened on May 6, 1980. The low bidder was Farrar Business Machines, Inc., which offered to furnish Optima typewriters for the total sum of $18,534. Capitol, the next lowest bidder, submitted an offer to furnish Remington typewriters for the total sum of $20,584.40.

The bids were evaluated by the Metropolitan Coordinator of Business Education, Mrs. Anne Mayes, to determine the lowest bid meeting specifications. After her evaluation, she determined that Farrar's typewriters did not meet specifications and recommended that its bid be rejected by the Board. The Board then awarded the contract to Capitol, the next lowest bidder. Arrangements were made by Capitol to purchase Remington typewriters in order to perform the contract.

On May 30, 1980, the Board mailed five purchase orders to Capitol. Thereafter, a representative from Farrar met with Mr. L.

C. Biggs, Purchasing Agent for the Board of Education, and, after this meeting, Mr. Biggs concluded that a mistake had been made and that the Optima machines which Farrar had purported to supply did meet specifications. On June 2, 1980, Mr. Biggs called Capitol and informed one of its officials that a cancellation notice was being sent and, later that day, this notice was sent to Capitol.

On June 10, 1980, the Board officially voted to rescind its contract with Capitol and to accept the bid of Farrar Business Machines. Capitol's suit against the Board for breach of contract then ensued.

After a bench trial the Chancellor found that the Board "lacked authority to enter into a contract with the second lowest bidder." He found that the Board is "bound to award contracts to parties submitting the lowest bid" and "[t]o do otherwise is an invalid exercise of authority." He concluded that the contract between Capitol and the Board was, therefore, ultra vires and unenforceable and dismissed Capitol's complaint.

Capitol urges that the Chancellor erred in his determination that the contract between Capitol and the Board was ultra vires. Section 15–1–18 of the Metropolitan Code sets forth the procedures to be followed in the procurement of goods and services for the Metropolitan Government. Subsection (h) provides that purchase orders "will be issued only to the parties making the lowest competent and responsible bid in accordance with the specifications contained in the invitation to bid." Therefore, the contract need not always be awarded to the lowest bidder; it must only be awarded to the lowest bidder if he is also competent and responsible.

The authorities have considered the provision that the contract be issued to the lowest competent, responsible bidder and it is generally held to mean not merely the lowest bidder whose pecuniary ability to perform the contract is deemed the best, but the bidder who is most likely, in regard to skill, ability and integrity, to do faithful, conscientious work, and promptly fulfill the contract according to its

letter and spirit. Accordingly, the requirement that the contract shall be let to the 'lowest responsible bidder' does not require the letting to the lowest bidder upon ascertaining his financial responsibility only, but the term 'responsible' includes the ability to respond by the discharge of the contractor's obligation in accordance with what may be expected or demanded under the terms of a contract. 10 McQuillin, *Municipal Corporations* § 29.-73 (3rd ed. 1981).

The Metropolitan Charter, Section 8–111, provides that a metropolitan purchasing agent "may reject any and all bids received for purchase or sales." This grant of authority to the purchasing agent means that "the officers need not award the contract to the lowest bidder although he is a reliable and responsible bidder ...." 10 McQuillin, *supra,* § 29.77.

■ The Board contends that because of T.C.A. § 6–2–103, which provides,

*Contracting parties on inquiry as to municipal powers.*—All persons dealing with municipal corporations, shall be put upon inquiry; and in all cases the burden of proof shall be upon them to show the law is pursued as to its powers; and every act, contract and agreement ultra vires shall be null and void,

the contract with Capitol is ultra vires and, therefore, null and void. We disagree. We are of the opinion that Section 15–1–18 of the Metropolitan Code, providing that contracts will only be awarded to parties making the lowest competent and responsible bids, and Section 8–111 of the Metropolitan Charter, providing for the rejection of any and all bids, give authority, under the circumstances of the instant case, to the Board of Education to award Capitol the contract.

Mrs. Anne Mayes, the Board's expert as to whether the typewriters met specifications, upon an examination of the machines, determined that Farrar's machine did not meet the specifications and that Capitol's, the second lowest bidder, did. Because of Mrs. Mayes' opinion, the Board then determined, in good faith, that Capitol's bid was the lowest competent and responsible bid

and, in good faith, the Board and Capitol entered into a contract. This fact, coupled with the Board's authority to reject any and all bids, gave the Board the authority to contract with Capitol. The contract was not ultra vires and is enforceable. When the Board attempted to rescind its contract with Capitol and award it to Farrar, it acted in breach of an enforceable contract, and Capitol is entitled to damages.

Capitol next contends that the Chancellor erred in ruling that it was not entitled to recover its lost profits as being too speculative. Capitol insists that it was entitled to lost profits and that it proved such losses in the amount of $4,320 with great precision.

■ The statutory provisions controlling the award of damages for non-acceptance or repudiation of a contract is T.C.A. § 47–2–708, which provides:

*Seller's damages for nonacceptance or repudiation.*—(1) Subject to subsection (2) and to the provisions of this chapter with respect to proof of market price (§ 47–2–723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (§ 47–2–710), but less expenses saved in consequence of the buyer's breach.

(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter (§ 47–2–710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

In the instant case Capitol was a "middle man," purchasing typewriters from a dealer and reselling them to the Board at a higher price. Capitol's measure of damages cannot be based on market price less unpaid contract price as provided in T.C.A. § 47–2–708(1), since such a measure is inadequate

to put Capitol in as good a position as would have performance of the contract. The measure of damages which would put Capitol in as good a position as if the contract had not been breached is anticipated profit, including reasonable overhead, as provided in T.C.A. § 47–2–708(2). *See Joest v. John A. Denie's Sons Co.*, 174 Tenn. 410, 126 S.W.2d 312 (1939). *See also, Distribu-Dor, Inc. v. Karadanis*, 11 Cal.App.3d 463, 90 Cal.Rep. 231 (1970).

This rule would apply even though Capitol never had the typewriters in its possession. *See White & Summers Uniform Commercial Code* § 7–10 (1972).

The evidence is that Capitol would have received a total of $7,210 for the 205 old typewriters traded in by the Board; that Capitol's cost for the 136 new typewriters would have been $23,324; and that Capitol saved some $150 by not performing the contract with the Board. Capitol's bid price was $20,584.40. The total lost profits to Capitol would therefore be $4,320.

Here Capitol's proof concerning lost profits is supported by factual information and this information is uncontradicted.

Plaintiff supported his estimate with factual information from his own experience and that of others. Testimony about prospective profits must to some degree be the result of estimation, but where, as in this case, it is supported by factual information and uncontradicted, it is sufficient to justify a recovery.

*Ford Motor Co. v. Taylor*, 60 Tenn.App. 271, 292, 446 S.W.2d 521, 530 (1969). Capitol is entitled to recover the sum of $4,320.00.

The judgment of the Chancellor is reversed with costs to the Board. This cause is remanded to the Chancery Court for the entry of a judgment for Capitol in the sum of $4,320.00, for the collection of costs, and for any other necessary proceedings.

TODD, P. J. (M. S.), and CANTRELL, J., concur.